Steve P. CARY, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1182S409.

Supreme Court of Indiana.

Oct. 15, 1984.

Ralph Ogden, J. William DuMond, Wilcox, Ogden & DuMond, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Armed Robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979) and Kidnapping, a class A felony, Ind.Code § 35–42–3–2(b) (Burns 1979). He was sentenced to concurrent terms of twenty (20) years imprisonment for armed robbery and fifty (50) years imprisonment for kidnapping.

His direct appeal presents nine (9) issues for our review, which we have consolidated into four (4) issues as follows:

(1) Whether the evidence is sufficient to sustain the convictions;

(2) Whether the trial court erred in permitting a witness to testify that the Defendant had raped her, inasmuch as he was not charged with that crime;

(3) Whether the trial court erred in failing to admonish the jury to disregard an allegedly improper question by the prosecutor to one of the witnesses;

(4) Whether the trial court erred when it enhanced the Defendant's sentences.

The record disclosed that on February 22, 1981, S.W. could not get her 1977 "greenish, gold" two-door Datsun F–10 automobile to start when she tried to leave a food store in South Chicago Heights, Illinois. Two men, one of whom she later identified as the Defendant and the other who was identified as Russell Wright, offered assistance and then asked for a ride. She agreed to drop them off; Defendant got into the back seat of the automobile, and Wright got into the front seat.

Wright subsequently grabbed the steering wheel of the automobile and said, "You're taking the day off." He told her that if she did not believe him she should look in the back seat. She did so and saw the Defendant pointing a double-barreled sawed-off shotgun at her. While the automobile was stopped at a traffic light, Wright made her move to the passenger seat, and he drove. While both men rummaged through her purse and took her money she begged them to let her go home to see her baby.

Subsequently, Defendant asked her if she had ever been raped and told her, "You will be." She was then forced to get into the back of the car, where the Defendant told her to remove her clothes and forced her to have sexual intercourse and then to perform felatio. The Defendant and Wright then exchanged places, and Wright raped her.

Subsequently, S.W. noticed that they were near Fish Lake, Indiana. Wright drove back and forth between a store and a gas station in Fish Lake and asked the Defendant, "Do you want to get this place or that one ... do you want to do it or do you want me to?" The Defendant responded that he didn't care, then he said, "I guess" I'll do it, but he did not get out of the automobile.

Wright then left the automobile with a paper bag and the gun. He entered the Fish Lake Market wearing a paper bag over his head with two slits cut out for his eyes. He pointed a sawed-off shotgun at one of the store owners, and she complied with his demand for money from the cash register. He took several hundred dollars, which was later recovered and returned to the owners. She then saw him run toward a green car and called to her husband, telling him that they had been robbed. Her husband followed the green car in his car and saw someone stick a sawed-off shotgun out of the passenger-side window of the car, which he was pursuing.

A high speed chase, with several police vehicles involved, ensued. Ultimately, the automobile driven by Wright struck Officer Swartzlander, who was standing by his squad car with his weapon drawn. S.W.'s automobile veered into a ditch, and the Defendant and Wright were arrested. Officer Swartzlander died at the scene.

## ISSUE I

Defendant first argues that the evidence is insufficient to support either the robbery conviction or the kidnapping conviction. Our oft stated standard of review is as follows:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State*, (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant argues that the evidence shows no active participation by the Defendant in either of the crimes and that Russell Wright was solely responsible for the criminal activity. "At best, it shows that he was a passive spectator who made no efforts to either assist or hinder Mr. Wright." (Brief of Defendant, p. 25). We do not agree with Defendant's characterization of the evidence.

With respect to the robbery charge, S.W. testified that Wright drove the car to Fish Lake and asked the Defendant if he wanted to "get this place or that one." The Defendant initially agreed to commit the robbery, but when he did not move to do so, Wright took the gun and did it himself. The Defendant waited in the automobile with S.W. When Wright returned to the vehicle he threw the money to Defendant and drove away. The owner of the grocery store who pursued the robber testified that during the chase he observed a shotgun sticking out of the passenger side of the automobile, and S.W. testified that Defendant occupied that seat during the pursuit.

With respect to the kidnapping charge, the evidence disclosed that after Wright had grabbed the steering wheel of S.W.'s automobile, he told her that she was taking the day off and that she should look in the back seat if she did not believe him. When she turned she saw Defendant pointing a shotgun at her. Subsequently, during S.W.'s entreaties to them to let her go, Defendant ordered her to keep quiet or he would "blow her head off."

Ind.Code § 35–41–2–4 (Burns 1979) provides that one who knowingly or intentionally "aids, induces, or causes another person to commit an offense commits that offense." An accomplice is criminally liable for everything done by his confederates which was a probable and natural consequence of their common plan. *Proctor v. State*, (1979) 272 Ind. 357, 360, 397 N.E.2d 980, 983. The accessory need not act out each element of the offense with which he is charged; the acts of one accomplice are imputed to all others. *Id.; Harris v. State*, (1981) Ind., 425 N.E.2d 154, 156. Although mere presence at the scene of the crime, standing alone, is not sufficient to permit an inference that one participated in a crime, such presence may be considered in conjunction with other evidence as one of

the factors in the determination of guilt. *Griffin v. State,* (1980) Ind.App., 413 N.E.2d 293, 295. Other factors to be considered include companionship with one engaged in a crime and the course of conduct before and after the occurrence of the offense. *Id.; Harris v. State,* 425 N.E.2d at 156.

The evidence here shows that Defendant and Wright acted in concert from the time they kidnapped S.W. until the time they were arrested. Defendant's role in the crimes was that of active participant, not mere bystander. The evidence is clearly sufficient to sustain both convictions.

### ISSUE II

Prior to trial, Defendant filed a motion *in limine* to preclude any testimony that Defendant or Wright had engaged in any sexual acts with S.W. or that S.W. had been forced to remove her clothes. The court granted the motion "with the exception of opening statements by counsel." During the testimony of S.W., however, in a nonresponsive answer to a question posed by the prosecutor, she blurted out that Defendant had raped her. Defense counsel objected, moved to strike her statement, and moved for a mistrial. The court heard arguments by the parties outside the presence of the jury and then ruled: "The court's ruling is that any acts, statements, occurrences and circumstances which occurred in this automobile ride from Chicago to Fish Lake is admissible." He overruled Defendant's objection and denied the mistrial motion. Defendant assigns such ruling as reversible error.

Following the ruling of the trial court, S.W. testified that both Defendant and Wright had raped her and forced her to perform other sexual acts during the time they compelled her to remain with them in her vehicle. Defendant argues that such evidence was irrelevant to the charges of robbery and kidnapping, that it was highly prejudicial to the Defendant, and that evidence of criminal conduct by a defendant other than that for which he is being tried is inadmissible.

The general rule is that evidence of criminal activity other than that which is charged is inadmissible on the question of defendant's guilt; however, among other exceptions, this Court recognizes the *res gestae* exception to the general rule. *Beasley v. State,* (1983) Ind., 452 N.E.2d 982, 984; *Brown v. State,* (1981) Ind., 417 N.E.2d 333, 337. *Res gestae* means "things done" and includes acts, statements, occurrences, and circumstances that are "so closely connected to the occurrence as to be part of it." *Roddy v. State,* (1970) 254 Ind. 50, 53, 257 N.E.2d 816, 818.

In the case at bar, S.W. was kidnapped and was forced to remain with her abductors for several hours. She testified that, during that time, both men raped her. The crime spree continued as the two, still forcing S.W. to remain with them, drove to Fish Lake where Wright committed a robbery. Not until the police apprehended the two men was S.W. free of her captors. Even though Defendant was not charged with rape, the alleged rape was one of the events which occurred during the course of the crime spree and was admissible as part of the *res gestae* of the crimes charged.

### ISSUE III

During the prosecutor's redirect examination of S.W. he asked her, "Like to go home and see your babies?" Defense counsel objected to the question as beyond the scope of cross-examination and as an attempt to inflame the jury. The court overruled the objection to the question on the grounds that it had already been answered. Defendant argues that the question, which was not audibly answered, was asked "solely to elicit sympathy for the victim as the mother of small children, and was thus a harpoon thrown by the State which was designed to strip the Defendant of his right to a fair trial." (Brief of Defendant, p. 32).

Although we find the question to have been improper and an example of over-zealous prosecution, it is unlikely, in view of all of the evidence, to have conveyed any idea

to the jury that it did not already have. The error was harmless.

### ISSUE IV

Upon sentencing the Defendant, the trial court listed the aggravating and mitigating circumstances as follows:

"The Court finds that there are aggravating circumstances which are sufficient to order increased sentences, which such circumstances are as follows:

(1) The use of a deadly weapon was involved;

(2) The defendant showed no remorse for his participation in the crimes;

(3) The crimes threatened serious harm to the kidnap victim;

(4) The criminal activity started in the early evening on a Saturday, and continued through the afternoon of the following day, which was Sunday; and

(5) The death of a police officer was involved and, although he was not found guilty of a crime in connection with that death, the conduct of the defendant and his companion was the direct cause of this tragedy.

"The court did consider the mitigating circumstances, which such circumstances are as follows:

(1) The defendant has lived a very difficult life because of a lack of home situation and parental guidance;

(2) Drugs and alcohol were involved, which was a factor in the beginning of this spree; and

(3) The defendant did not have a criminal record.

"However, these mitigating circumstances do not change the fact that the defendant is guilty of criminal conduct of the most serious nature."

■ Defendant argues that the trial court erroneously considered the use of a deadly weapon and the death of Officer Swartzlander as aggravating circumstances and failed to give effect to the mitigating circumstances which it listed. However, in view of the other aggravating factors which are beyond dispute and which are sufficient to support the trial court's enhancement of Defendant's sentences, we decline to address Defendant's contentions. *See Richardson v. State*, (1983) Ind., 447 N.E.2d 574, 575.

■ With respect to Defendant's claim that the trial court failed to give effect to the mitigating factors, this Court has held that under the sentencing statute, consideration of possible mitigating circumstances and the weight they should carry is a highly discretionary matter. *Green v. State*, (1983) Ind., 451 N.E.2d 638, 639; *Richardson v. State*, 447 N.E.2d at 576. The court stated that it gave more weight to the aggravating circumstances than it did to the mitigating circumstances. We find no abuse of discretion. Nor can we say, considering the nature of the crimes and the offender, that the sentences are manifestly unreasonable. Ind.R.App.Rev. Sen. 2.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.