Richard HICKS, a/k/a Richard Stewart, Appellant,

v.

STATE of Indiana, Appellee.

No. 283S40.

Supreme Court of Indiana.

March 1, 1985.

Reginald B. Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a bench trial, Defendant (Appellant) was convicted of felony murder, Ind.Code § 35-42-1-1(2) (Burns 1979) and robbery, a class A felony, Ind.Code § 35-42-5-1 (Burns 1979). He was sentenced to forty (40) years imprisonment upon the felony murder conviction and to thirty (30) years imprisonment upon the robbery conviction. This direct appeal presents three (3) issues for our review, as follows:

(1) Whether the evidence was sufficient to sustain the convictions;

(2) Whether the trial court erred in entering judgment of conviction and sentencing the Defendant for both felony murder and robbery;

(3) Whether the trial court erred in sentencing the Defendant as it did.

The record discloses that on the evening of June 6, 1980, the victim, William Finley, was at the Varsity Lounge, a bar in Indianapolis, between 7:00 and 9:00 p.m. and between 11:00 p.m. and 1:30 a.m. and that his automobile, a yellow Ford Pinto, was in the parking lot.

On June 9, 1980, Finley's roommate, who was out of town, received a telephone call informing him that Finley had not come to work on Saturday, June 7 or Monday, June 9, and that his employees had been unable to reach him at his apartment. Upon returning to Indianapolis and his apartment, the roommate found Finley lying in the hallway and their apartment in disarray.

The police arrived approximately twenty minutes later, and the victim's roommate informed them that several items were missing from the apartment, including a portable Sony color television set, a clock radio, a gold ring, a silver ring, a set of Canadian souvenir coins, a "Pringle's" can of pennies, and a leather coat. He also told police that Finley's yellow Pinto automobile was missing.

Ed Brandenburg testified that he first met the Defendant in May, 1980, while working at the Tunnel Bar. The Defendant and his girlfriend Deanna came into the bar and asked him about places to stay. Brandenburg told them that they could spend the night at his house, and they stayed for three weeks. At about 4:30 a.m. on June 7, 1980, Brandenburg returned to his apartment and there found the Defendant and Deanna watching a Sony color television set which had not been there earlier. He asked the Defendant where the television set had come from and testified that the Defendant told him that "he'd picked up this queer and that, uh, he was going to give him some money for a blow job and he didn't, so he—he took the stuff." Brandenburg also testified that the Defendant told him that he had hit and kicked the man and had taken his car. The Defendant showed Brandenburg some blood on his pants and a checkbook with the name and address of William D. Finley on it and stated that he intended to use

some of the checks. Brandenburg further testified that the Defendant had a "Pringle's" can with some pennies in it, some silver dollars, a horseshoe ring and some other rings, and a leather coat. The next day Brandenburg sold four of the silver coins which the Defendant said he had taken from the man.

Brandenburg testified further that on June 10, 1980, the Defendant and his girlfriend moved out of his apartment and that he subsequently found a barbecue fork which had not been in the apartment previously. Brandenburg did not again hear from the Defendant until July 9, 1980 when the Defendant called him at work and told him "that dude died," and asked if anyone had been asking questions. Later that evening, Brandenburg called the police.

Deanna Sharbnow testified that she had known the Defendant for two years and that she saw him at Brandenburg's apartment at approximately 4:30 a.m. on June 7, 1980. When the Defendant came in he had blood on his pants and shirt and told her that he had stabbed someone with a fork and had taken his car. The Defendant also had a television set, a leather jacket, jewelry, and coins with him. Three days later she and the Defendant left Indianapolis after watching a news broadcast which detailed the death of William Finley. Sharbnow stated that the Defendant told her that he had killed Finley and that they would have to leave.

Russell Jackson of the Prairie County Sheriff's Department in Arkansas testified that on August 25, 1981, he arrested the Defendant for automobile theft. While running the Defendant's several names through the computer, the Defendant said to Jackson, "[I]f you're going to run a check on all them names, you might as well get the extradition papers ready for me, 'cause I'm wanted in Indiana for murder." The computer check verified that information. Subsequently, the Defendant told Officer Jackson that he had killed a man in Indiana by hitting him with a karate blow and that he had taken money, a television, a stereo, and other odds and ends

from the victim. Another police officer from Arkansas testified that the Defendant told him that he was wanted for murder in Indiana because he had used karate on and had stabbed a man in Indianapolis.

Further testimony revealed that the Defendant's fingerprints were found on a coffee cup in the victim's apartment and that the victim died as a result of strangulation and a stab wound in the chest consisting of two punctures. The doctor who performed the autopsy stated that the stab wounds could have been made by a two-pronged fork and that a karate chop to the throat could have caused the wound and hemorrhaging on the victim's throat.

The Defendant testified that on June 6, 1980, he met a man called Duke and the victim at the Varsity Bar. Subsequently, after he left the bar alone and was walking along the street, the two men stopped and invited him to the victim's apartment. Upon arriving there, he went to sleep on the couch. He awoke to find Duke and the victim fighting. He swung at both men, was stabbed in the arm with a fork, grabbed the fork, and left the apartment, taking the victim's car. He testified that when he left the apartment, Finley was alive and that when he telephoned Finley the next day to inform him of his car's whereabouts, he received no response. He denied taking any items from the apartment, but admitted finding a jacket, a "Pringle's" can, and some coins in the automobile.

## ISSUE I

Defendant's challenge to the sufficiency of the evidence is directed to the credibility of the State's witnesses. He argues, "[T]he only incriminating evidence concerning the alleged murder is so inherently unbelievable that it does not constitute evidence beyond a reasonable doubt." He further argues that the State failed to prove that he killed the victim while perpetrating a robbery.

Our often stated standard of review upon a claim of insufficient evidence is as follows:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State*, (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant has asked us to rejudge the credibility of the State's witnesses, something that we will not do unless the witnesses' testimony is inherently unbelievable. *Wilson v. State*, (1984) Ind., 465 N.E.2d 717, 720, and cases cited therein. That witness Brandenburg had been convicted of a felony, that witness Sharbnow had been a psychiatric patient and had not initially revealed her married name to the court, and that Officer Jackson did not have the Defendant's incriminating statements reduced to writing does not render each witness's testimony inherently unbelievable. The court was made aware of these facts, and it was its responsibility to assess the credibility of the witnesses. *Id.*

We further find that Defendant's claim that the State failed to prove that he killed the victim while perpetrating a robbery has no merit. The victim's body was found in his ransacked apartment on June 9, 1980. He died as a result of strangulation and a stab wound. Several of the items missing from Finley's apartment were in the Defendant's possession at 4:30 a.m. on June 7, 1980. At that time, the Defendant, who had blood on his clothing, told his girlfriend that he had stabbed a man with a fork and told Brandenburg that he had hit and kicked a man and had taken several items, including a color television set, a checkbook with Finley's name on it, silver coins, and Finley's car. Upon learning that Finley was dead, the Defendant left town. In addition, he admitted to Brandenburg, Sharbnow, and two police officers in Arkansas that he had killed the deceased. Such evidence is clearly sufficient to sustain the conviction.

## ISSUE II

The trial court erred in sentencing Defendant upon both the felony murder count and the robbery count, inasmuch as robbery was the felony relied upon in charging and proving the felony murder. When convictions for both felony murder and the underlying felony are obtained, sentencing can occur only upon the greater felony of murder. *Stewart v. State*, (1982) Ind., 442 N.E.2d 1026, 1033; *Forrester v. State*, (1982) Ind., 440 N.E.2d 475, 488; *Biggerstaff v. State*, (1982) Ind., 432 N.E.2d 34, 37. In *Biggerstaff* we wrote:

"When an indictment for murder in the commission of a felony is filed under I.C. 35–42–1–1(2) [Burns' 1979 Repl.], the indictment may include an additional count for the felony itself. If the defendant is convicted of the felony murder, merger occurs and the conviction and sentencing may not occur on both counts."

*Id.*

Consequently, the judgment and sentence imposed upon the conviction for robbery must be vacated.

## ISSUE III

Inasmuch as Defendant's conviction and sentence upon the robbery count is ordered vacated, we will consider here only his sentence upon the felony murder conviction—a term of imprisonment of forty (40) years, the presumptive sentence for such offense. Ind.Code § 35–50–2–3 (Burns 1979). In sentencing the Defendant to the presumptive term of imprisonment, the trial court stated that it found neither aggravating nor mitigating circumstances. Defendant argues that the trial court failed to take into consideration his age at the time of the offense (twenty-one years) and his minor prior criminal record as mitigating circumstances. However, under the sentencing statute, consideration of possible mitigating circumstances and the weight they should carry is a highly discre-

tionary matter. *Cary v. State*, (1984) Ind., 469 N.E.2d 459, 463, and cases cited therein. When the trial court imposes the basic sentence, we will presume that it considered the proper factors in determining the sentence. *Wilson v. State*, 465 N.E.2d at 721.

This cause is remanded to the trial court with instructions to vacate the conviction for robbery and the sentence imposed thereon. In all other respects, the judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.