Danny Lee **SCHOFFSTALL**,
Defendant-Appellant,

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 1–685A166.

Court of Appeals of Indiana,
First District.

Jan. 29, 1986.

James W. Boswell, Geoffrey G. Creason, Vigo County Public Defenders, Terre Haute, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Danny Lee Schoffstall (Schoffstall), defendant-appellant, appeals his conviction of reckless homicide, a Class C felony, from a jury trial in the Vigo Circuit Court.

We affirm.

### STATEMENT OF THE FACTS

On April 27, 1984, around 5:15 a.m., West Terre Haute Police Officer, Robert Thomas, was flagged down by Schoffstall while the officer was on routine patrol. Schoff-

stall told the officer that his infant son had been injured when, in the course of throwing the baby up in the air and catching him, he had accidentally dropped the baby on a brick. Schoffstall then requested Officer Thomas to transport him to his home, and the officer confirmed that an ambulance was already enroute.

As Officer Thomas entered Schoffstall's home and found the baby, he noticed the baby's eyes were puffy with one eye fixed or staring off to one side. Officer Thomas also noticed that the baby's nose and mouth had been bleeding, his face had bruises, and he had trouble breathing. After the ambulance arrived, the baby was transported to a hospital in Terre Haute and later transferred to a pediatric intensive care unit in an Indianapolis hospital. Baby Schoffstall died a few days later on April 30, 1984.

An autopsy was conducted on the baby's body on May 1, 1984, at the order of the Marion County Coroner's Office. Dr. Dean Hawley was the forensic pathologist who conducted the autopsy. Dr. Hawley discovered that the baby's body incurred approximately eleven separate incidents of an object and the body coming together to produce fresh injuries to the body, and other injuries discovered on the baby's body were produced by at least three separate events of the baby's body meeting a flat hard surface. Among these injuries were a lacerated spleen, an injured left lung with bleeding lung tissue, a lacerated lip, and a blackened left eye and cheek caused some weeks before the baby's death which revealed corresponding internal injuries of approximately the same age to the baby's brain. The most recent injuries to the baby's brain causing the baby's coma and eventual death was an external injury behind the right ear and several other old and new injuries to the scalp. Based on these multiple injuries separated in time and space, Dr. Hawley was of the opinion the child suffered from child abuse syndrome.

Regarding the proximate cause of death, Dr. Hawley testified that while there were multiple separate injuries that could have produced death, the one injury most proximate to death was an injury where the body was moving and collided with a stationary blunt surface. However, Dr. Hawley also gave his opinion that the baby's death was unlikely to have been caused by the child being tossed into the air and dropped on a brick or cement block as the baby's body revealed no evidence of an abrasion or "concrete burn" of the skin at the site of the contusion typical of that type of injury. Photographs of the autopsy and Dr. Hawley's testimony were admitted into evidence over Schoffstall's objection.

On May 2, 1984, Schoffstall gave a statement to the Indiana State Police which was tape-recorded. Schoffstall was subsequently arrested on May 24, 1984, following a grand jury indictment and gave a second tape-recorded statement. These recorded statements and the transcripts therefrom were also admitted into evidence over Schoffstall's objection.

During Schoffstall's initial hearing on May 29, 1984, he informed the court that he wished to waive his right against self-incrimination and his right to an attorney and inquired if he could be sentenced on that date. This inquiry by Schoffstall was picked up by television, radio, and other news media, and inaccurately reported that Schoffstall had tried to plead guilty but the plea attempt was rejected by the trial court. Schoffstall moved for a change of venue from the county which was denied.

## ISSUES

Schoffstall raises four issues in this appeal which we address in the following order:

I. Whether it was reversible error for the trial court to deny appellant's Verified Motion for Change of Venue From the County filed June 18, 1984, and renewed at the time of jury selection.

II. Whether it was reversible error for the trial court to allow into evidence at trial, over appellant's objection, tape recordings and written

transcripts of statements given by the appellant to Indiana State Police Officer Jerry Statler.

III. Whether it was reversible error for the trial court to deny appellant's Motion in Limine filed November 21, 1984, and renewed during the trial of the case.

IV. Whether it was reversible error for the trial court to sentence the appellant to the maximum possible sentence for the crime which the appellant was convicted of.

## DISCUSSION AND DECISION

### Issue I: *Change of Venue.*

Schoffstall's first argument is that it was reversible error for the trial court to deny his Verified Motion for Change of Venue from the County. The verified motion was filed on June 18, 1984, alleging that because of the voluminous, inaccurate, and prejudicial publicity in the Vigo County media, he could not receive a fair and impartial trial. On August 31, 1984, the trial court held a hearing on Schoffstall's motion. Admitted into evidence were television video tapes with commentary, transcribed copies of radio news broadcasts, and copies of newspaper articles disseminated in Vigo County reporting that Schoffstall had or had tried to plead guilty. The reports were inaccurate as Schoffstall never did try to plead guilty during his initial appearance. On September 6, 1984, Schoffstall's motion was denied.

■ In pursuing a change of venue from the county, it was Schoffstall's burden to allege and prove that community bias or prejudice exists which would prevent his chance of obtaining a fair trial in the county. *Gillie v. State* (1984), Ind., 465 N.E.2d 1380; IND. CODE 35–36–6–1. According to IND. CODE 35–36–6–1, while a hearing "shall" be held when a motion is filed, the use of the word "may" in ruling on the motion continues to import discretion on the part of the trial judge. On review, we will not reverse the trial court's ruling unless there is a clear showing of abuse of discretion. *Gillie, supra; Daniels v. State* (1983), Ind., 453 N.E.2d 160.

In addition to the above denial of Schoffstall's motion following a hearing, Schoffstall reiterated his motion for a change of venue from the county several times during voir dire. In the course of questioning the veniremen, many prospective jurors expressed familiarity with the prior media coverage regarding the inaccurate reporting of Schoffstall's attempted guilty plea. Each time this issue arose, the potential juror was admonished by the trial court that the prior news reports were not true and should be disregarded. Each potential juror stated an ability to disregard the prior reports and to base judgment only on evidence presented in court. Schoffstall exercised all of his preemptory challenges, but most of the jurors from which he was tried and convicted were at least somewhat familiar with reports of the case and one juror had heard reports of Schoffstall's alleged attempt to plead guilty. Each renewed motion a change of venue from the county was denied by the trial court.

Schoffstall's main contention here is that the trial court's rulings, while repeatedly admonishing prospective jurors to disregard the inaccurate reports of his alleged attempt to plead guilty, was an abuse of discretion denying him a fair trial. He argues he was denied an impartial jury not only because of the amount of the publicity surrounding his case, but also because the publicity was more than just a rendition of the general facts of the case.

■ Again, it was Schoffstall's burden to demonstrate that potential jurors were unable to set aside preconceived notions of guilt, if any, and to render a verdict based upon the evidence. *Lindsey v. State* (1985), Ind., 485 N.E.2d 102; *Linder v. State* (1985), Ind., 485 N.E.2d 73; *Gillie, supra; Smith v. State* (1984), Ind., 465 N.E.2d 1105. During voir dire, it is the trial court's role to weigh the evidence of potential community bias and to assess the credibility of the jurors to determine whether a defendant could receive a fair trial. *Lindsey, supra; Gillie, supra.*

Schoffstall must overcome the presumption that the jurors voir dire testimony was truthful. *See Smith, supra.*

■ The introduction of voluminous and inaccurate media reports does not rise to a per se showing of prejudice. Jurors need not be totally ignorant of the facts. *Smith, supra.* According to *Drollinger v. State* (1980), 274 Ind. 5, 13, 408 N.E.2d 1228, 1235, the court therein stated: "[W]e cannot presume, merely from the *amount* of pretrial publicity the case generated, that the trial setting was inherently prejudicial, in the absence of evidence of a 'trial atmosphere ... utterly corrupted by press coverage.' *Murphy v. Florida* (1975), 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589, 594." *Smith, supra.* Likewise, an accurate report in a weekly newspaper was not fatal to a fair trial in *Gillie, supra.* In *Gillie,* similar to the case at bar, the newspaper inaccurately reported that the defendant had pled guilty to robbery and theft and most of the jurors were familiar with reports of the case.

■ Since Schoffstall has failed to establish by clear and convincing evidence a community prejudice, and has failed to prove equivocation in the mind of any juror as to preconceived notions of guilt, the trial court did not abuse its discretion in denying his motions for change of venue from the county.

Issue II: *Admission of Tape Statement.*

A second issue raised by Schoffstall is that the trial court committed reversible error in admitting into evidence, over objection, State's Exhibit # 12, a tape-recorded statement given to the Indiana State Police following his arrest. Schoffstall's sole contention is that State's Exhibit # 12, comprised of a tape recording and a transcription of the tape, was erroneously submitted to the jury because the said tape was largely inaudible, failing the fifth foundational requirement in *Lamar v. State* (1972), 258 Ind. 504, 513, 282 N.E.2d 795, 800 that the tape be "of such clarity as to be intelligible and enlightening to the jury."

■ Despite the presence of a large number of inaudible notations contained in the tape transcription, it is incumbent upon Schoffstall to present evidence that the inaudible portions contained any crucial remarks which would contradict or change the nature of the conversation. *See Mc-Manus v. State* (1982), Ind., 433 N.E.2d 775. Inaudible notations in a transcript can occur for any number of reasons, many of which are immaterial or do not detract from the content or flow of the statement, and Schoffstall was in the best position to point out discrepancy between the tape and the transcription. We do not require that every word be intelligible; we only require that, taken as a whole, the tape be of such clarity and completeness to preempt speculation in the minds of the jurors as to its content. *Hobson v. State* (1984), Ind., 471 N.E.2d 281. Wide discretion is given to the trial court as to whether the guidelines in *Lamar* have been met. *Hobson, supra.*

■ Prior to admitting the evidence, the trial court correctly cautioned the jury that if discrepancy occurs between the tape and the transcription, the tape should prevail. *Bryan v. State* (1983), Ind., 450 N.E.2d 53. The judge and jury were able to read the transcription while the tape was being played to determine the accuracy of the transcription. Since Schoffstall has presented no error, the trial court did not err in admitting the exhibit.

Issue III: *Other Injuries.*

Schoffstall's third argument is that the trial court committed reversible error by denying his motion in limine and by admitting into evidence testimony and exhibits pertaining to the subject of his motion. The motion in limine sought to preclude the State from introducing evidence of any injuries sustained by the victim which were inflicted prior to April 27, 1984, the date of the fatal injury, unless it could first show that Schoffstall caused the prior injuries. While the record does not reveal whether the trial court ever specifically ruled on the motion, when the State sought to introduce autopsy photographs and Dr. Hawley's tes-

timony therefrom, Schoffstall objected on the grounds that unless the injuries were shown to have been caused by Schoffstall, the evidence is irrelevant and immaterial to any issue in the cause.

In response to Schoffstall's relevancy objection, relevancy may be determined by whether a witness would be permitted to describe verbally the objects photographed. *Drollinger, supra; Wilson v. State* (1978), 268 Ind. 112, 374 N.E.2d 45. Photographs depicting gory, revolting, or inflamatory details of the crime are not a sufficient basis for excluding the evidence. *Drollinger, supra; Wilson,* 374 N.E.2d at 48. In *Drollinger,* the court admitted autopsy photographs which depicted the victim's wounds in greater detail and ruled "[t]he photographs were illustrative of the pathologist's testimony and tend to show the nature and extent of the wounds and to prove the cause of death." *Id.,* 408 N.E.2d at 1238. Where the photograph exhibits are established to be a true and accurate representation of the object intended to be portrayed, they may be admitted. *Wilson,* 374 N.E.2d at 48; *Johnson v. State* (1972), 258 Ind. 648, 283 N.E.2d 532.

In the case at bar, the trial court was satisfied that the photographs were a true and accurate representation of what the victim's body looked like upon Dr. Hawley's examination. The State, in response to the objection, offered the exhibits for the purpose of Dr. Hawley testifying as to the cause of the victim's death. Dr. Hawley needed to distinguish between the old and fresh injuries in determining which injuries caused the victim's death, but his testimony did not attribute the cause of the older injuries to the actions or inactions of Schoffstall. The admission of the exhibits are within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Drollinger, supra; Wilson,* 374 N.E.2d at 48. Accordingly, we find no abuse here.

Schoffstall further argues that the introduction of the exhibits and Dr. Hawley's testimony therefrom reveal evidence of prior acts of crimes which are inadmissible to prove his guilt. *Cary v. State* (1984), Ind., 469 N.E.2d 459. Schoffstall concedes, however, that such evidence is admissible for such purposes as showing intent, motive, purpose, identification, or common scheme or plan, and in *Martin v. State* (1978), 267 Ind. 583, 372 N.E.2d 181 and *Corbin v. State* (1968), 250 Ind. 147, 234 N.E.2d 261, ·prior acts of child abuse were admissible to show intent or motive of the defendants charged with murdering their infant children. We further note that under the federal rules, such evidence may be introduced for additional purposes such as opportunity or absence of mistake or accident. FED.R.EVID. 404(b). During the course of the injuries, the victim was in the co-custody of Schoffstall. He admitted he had an uncontrollable temper and had asked his wife to take their baby and live with her sister until the baby was older and did not cry so spontaneously. Dr. Hawley's testimony revealing numerous prior injuries tended to negate Schoffstall's contention that he accidentally dropped the child. They tend to show a continuing pattern of abuse by the custodian culminating in the child's death.

Schoffstall tries to distinguish this case from *Martin, supra,* and *Corbin, supra,* in that in those cases, the prior acts of child abuse were shown to have been committed by the defendant prior to being introduced which was not done in the case at bar. As stated above, the evidence was properly admitted as relevant for the purposes intended. Subsequently, the State did introduce evidence which circumstantially and directly implicated Schoffstall as the person who inflicted the old and fresh injuries. Schoffstall's wife testified that she had heard on two prior occasions what sounded like slapping sounds coming from the bedroom where Schoffstall and the baby were alone together. She stated that after one of those occasions she had observed bruises on the baby's face and once the baby's upper lip was bleeding, which injuries were confirmed by Dr. Hawley's testimony. Under Schoffstall's own recorded statements, as ruled properly admit-

ted above, he admitted causing old and fresh injuries and admitted he had an uncontrollable temper. This evidence is sufficient for such limited purposes as showing motive, intent or common scheme or plan.

Schoffstall finally argues that the evidence gives his community reputation for bad character when he had not tendered any evidence of his good character. However, the evidence was not introduced as such nor was there objection on those specific grounds at trial.

Issue IV: *Sentence.*

Schoffstall's fourth allegation of error is the trial court's failure to articulate mitigating circumstances in its statement of reasons for his sentence imposed.

 We agree with Schoffstall to the extent that a trial judge must set forth particularized findings supporting any aggravating or mitigating circumstances when departing from the presumptive sentence. *Wilson v. State* (1984), Ind., 458 N.E.2d 654; *Page v. State* (1981), Ind., 424 N.E.2d 1021. Consideration of the possible mitigating circumstances and the weight they should carry is a highly discretionary matter. *Hicks v. State* (1985), Ind., 474 N.E.2d 987; *Cary, supra.* As stated in *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 496, "[a]lthough a trial judge can use mitigating factors to determine an ultimate sentence, mitigating factors are not a mandatory consideration in sentencing a criminal defendant." *See also Smith v. State* (1985), Ind., 485 N.E.2d 898.

Following Schoffstall's conviction of reckless homicide, a Class C felony, the trial court issued a statement of reasons listing 13 factors as aggravating circumstances before imposing an eight year sentence. Among these factors, and similar to the court in *Wagner*, the trial court considered the victim's age and defenseless character, successive acts of violence, lack of credibility to the defense, the heinous nature of the crime, the propensity for similar crimes of violence, and that to impose less than the maximum sentence would depreciate the seriousness of the crime. In reviewing a sentence, we determine whether it is manifestly unreasonable in light of the nature of the offense and character of the offender. Ind. Rules of Procedure, Appellate Review of Sentences Rule 2(1). According to the facts of this case, there was no abuse of discretion by the trial court, nor is the sentence imposed manifestly unreasonable.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.