Thomas R. COOK, a/k/a Richard A. Dowdell, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

Paul J. PETERSON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

Nos. 91-100, 91-101.

Supreme Court of Wyoming.

Nov. 20, 1992.

Leonard D. Munker, State Public Defender, David Gosar, Appellate Counsel, Deborah Baumer (argued), Asst. Public Defender, and Deborah Gabriel, Legal Intern, for appellants.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Theodore E. Lauer, Faculty Director, Prosecution Assistance Program, and Herman Gene Walker, Jr., Student Intern (argued), for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

CARDINE, Justice.

After pleas of guilty to felony murder, aggravated robbery and conspiracy to commit aggravated robbery, appellants each were sentenced to terms of life, 20 to 25 years, and 20 to 25 years, the sentences to run consecutively. They appeal now presenting the central issue of whether the sentencing court could lawfully impose a sentence for felony murder and a separate sentence for the underlying felony, in this case aggravated robbery. *Birr v. State,* 744 P.2d 1117 (Wyo.1987), *cert. denied* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671

(1990), answered that separate punishments were authorized; and, therefore, courts imposing such sentences would not violate constitutional double jeopardy provisions. Acknowledging the legal doctrine of *stare decisis,* appellants, nevertheless, request a reexamination of that decision.

We reverse the multiple punishments imposed and overrule *Birr.*

Appellants confine their consolidated appeal to a single issue:

I. Did the consecutive sentences imposed for felony murder and the underlying felony violate the double jeopardy clauses of the United States and the Wyoming Constitutions?

I

FACTS

Armed with a twenty-gauge shotgun, Richard A. Dowdell (a/k/a Thomas R. Cook) (hereinafter Cook) and Paul J. Peterson (hereinafter Peterson) planned a robbery and scouted a number of service stations and businesses in Greybull, Wyoming on July 26, 1990. When the pair drove their black van into the Gasamat, they saw Darrel· Hanson (Hanson), the 69–year–old manager, working alone. While Cook pried the cash drawer open, Peterson hit Hanson over the head two times with the barrel of a sawed-off shotgun. After stealing approximately $360.00 in cash and some cigarettes, Cook returned to the van and saw Hanson attempting to get up from the station floor. Cook told Peterson, who was on his way out of the station, to shoot Hanson. Peterson complied, killing Hanson with a shotgun blast to his neck. A local resident driving by the Gasamat the evening of the robbery noticed a black van speeding away from the station. Law enforcement authorities across the State were notified of the van's description.

The next day, a Wyoming highway patrol officer spotted Cook and Peterson driving their black van across southwestern Wyoming's Interstate 80. After being spotted, Cook and Peterson led officers on a fifty-

---

* Chief Justice at time of oral argument.

two mile high-speed chase. The pair shot at the pursuing law enforcement officers during the chase. Authorities were successful in stopping and arresting Cook and Peterson. They obtained a search warrant and discovered a twenty-gauge single shot sawed-off shotgun and ammunition inside the van. Ballistics tests positively identified a shell casing found at the Gasamat as having been fired from the sawed-off shotgun found in the van.

In return for the State's agreement not to seek the death penalty, Cook and Peterson pled guilty to felony murder, W.S. 6-2-101(a) (Supp.1991); aggravated robbery, W.S. 6-2-401(c)(i) (1988); and conspiracy to commit aggravated robbery, W.S. 6-1-303(a) (1988). The court sentenced each man to life for the felony murder count; 20 to 25 years for aggravated robbery and 20 to 25 years for conspiracy, the sentences to run consecutively. Cook and Peterson, in this consolidated action, appeal only the imposition of multiple punishments for the felony murder and the underlying felony of aggravated robbery.

Before beginning our discussion of the legal issues, it is necessary to sound a note of caution. In their brief, appellants refer to the facts of this case as being "irrelevant." This characterization reflects a callous view of this incident's impact which we must forcefully decry. For the victim, his life ended suddenly and violently while innocently engaged in meaningful employment. For the victim's family, friends and the community, violent death shatters illusions of peaceful lives sheltered from other's problems. For Cook and Peterson, both 19 at the time of the crime, their lives were obviously changed forever. Far from irrelevant, the facts give reason to the prosecutor's discretionary use of his charging authority in pursuing multiple charges and pleas. Advocacy on behalf of a client and blind justice demand a more accurate portrayal of such events than "irrelevant."

## II

## DISCUSSION

The law of double jeopardy is "confused, inconsistent, and less than a model of clari-ty." *Howard v. State*, 762 P.2d 28, 40 (Wyo.1988) (Thomas, J., dissenting) (citing *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissenting)). Such an appraisal is easily documented. What emerges from a survey of federal and state precedent is a potholed path to a mirage. In this instance, the mirage is that icon of "settled law." The travail comes not from the protection accorded by double jeopardy but from the analysis required to determine its applicability. Recent decisions of the United States Supreme Court have clarified the required analysis compelling a reexamination of our decision in *Birr*.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides three separate constitutional protections. "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 306–07, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984), *citing Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *accord, Tuggle v. State*, 733 P.2d 610, 611 (Wyo.1987). As used in the Double Jeopardy Clause, "same offense" means "the same crime, not the same transaction, acts, circumstances, or situation." Black's Law Dictionary 1081 (6th ed. 1990).

■ The Fifth Amendment is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The Wyoming Constitution assures the same three protections in stating: "nor shall any person be twice put in jeopardy for the same offense." Wyo. Const. Art. 1, § 11; *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo.1977); *Hopkinson v. State*, 664 P.2d 43, 68 (Wyo.), *cert. denied* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). Only the protection against multiple punishments is at issue in the present case.

In *Ex Parte Lange*, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1873), the United States Supreme Court first enforced the protection against multiple punishments. Edward Lange received both a fine *and* a one year prison sentence for stealing post office mail-bags. After paying the fine and beginning his jail sentence, Lange filed for writs of habeas corpus and certiorari. The Supreme Court held the lower court acted without authority in imposing multiple sentences because the permitted statutory punishment was a fine *or* imprisonment. *Lange*, 18 Wall. at 178.

If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

*Id.* at 168. The Court directed that the Constitution's "spirit" is "to prevent a second punishment under judicial proceedings for the same crime, so far as the common law gave that protection." *Id.* at 170.

*Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), announced a rule of statutory construction to be used in determining legislative intent to authorize multiple punishments. Blockburger was convicted of selling morphine hydrochloride not "in or from the original stamped package" and of selling such a drug without a "written order." *Id.*, 284 U.S. at 303–04, 52 S.Ct. at 182. Both crimes violated individual sections of federal stamp tax legislation. Blockburger challenged his consecutive sentences as being multiple punishments for the same offense since only a single transaction was involved. The Court stated, "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.*, 284 U.S. at 304, 52 S.Ct. at 182. Applying this standard, the Court held the statute created "two distinct offenses" which were violated during the course of a single sale by Blockburger. *Id.*

A three-part analysis framework emerged from subsequent United States Supreme Court decisions refining and explaining the multiple punishment protection. The initial step requires a determination of legislative intent to authorize separate punishment. *Albernaz v. United States*, 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981). The language of the statutes provides the "starting point" to apply established rules of statutory construction. *Id.* A specific legislative authorization for cumulative punishment is dispositive:

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

In the absence of a "clear indication" of legislative intent to authorize multiple punishments, the *Blockburger* test is applied as the second part of the analysis. *Whalen*, 445 U.S. at 691–92, 100 S.Ct. at 1437–38. The assumption underlying the application of the test is that the legislative branch "ordinarily does not intend to punish the same offense under two different statutes." *Id.* The *Blockburger* test is a "rule of statutory construction." *Albernaz*, 450 U.S. at 337, 101 S.Ct. at 1141; *Whalen*, 445 U.S. at 691, 100 S.Ct. at 1437. In *Hunter*, the Court explained that, as a rule of statutory construction, *Blockburger* "is not a constitutional rule requiring courts to negate clearly expressed legisla-

tive intent" authorizing cumulative punishment. *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679.

A formerly confusing aspect of the *Blockburger* test has recently been clarified. *See, Lauthern v. State,* 769 P.2d 350, 352–53 (Wyo.1989). The test refers to "whether each provision requires proof of an additional *fact* which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 (emphasis added). For some commentators and judges, this terminology created a belief that *Blockburger* was a "same evidence" test. We need only look to Wyoming's adoption of the *Blockburger* test as an example of the misunderstanding. In *State v. Carter,* 714 P.2d 1217, 1220 (Wyo.1986), this court held charges of delivery of a controlled substance and possession of a controlled substance with intent to deliver did not merge for double jeopardy purposes. The analysis for this holding, which we do not challenge, was derived primarily from two federal cases. Both *United States v. Orzechowski,* 547 F.2d 978, 986 (7th Cir.1976), *cert. denied* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977), and *United States v. Carcaise,* 763 F.2d 1328, 1333 (11th Cir.1985), applied what was termed the "different evidence" test. *Carcaise* explained that the " 'different evidence' test takes its lead from the Supreme Court's decision in *Blockburger.*" *Carcaise,* 763 F.2d at 1333 n. 18. The "different evidence" test is also known as the "same evidence" test. *Lauthern,* 769 P.2d at 356.

*Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), specifically refuted the characterization of *Blockburger* as a "same evidence" test. The Court declared: "The *Blockburger* test has nothing to do with the *evidence* presented at trial. It is concerned solely with the statutory elements of the offenses charged." *Corbin,* 495 U.S. at 521 n. 12, 110 S.Ct. at 2093 n. 12 (emphasis in original); *accord, United States v. Felix,* — U.S. —, —, 112 S.Ct. 1377, 1382, 118 L.Ed.2d 25 (1992).

The statutory elements focus is consistent with *Blockburger's* language and other Supreme Court precedent. The *Block-*

*burger* Court precisely noted, in applying the test to the two offenses at issue: "Each of the offenses created requires proof of a different *element.*" *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 (emphasis added). Reviewing *Blockburger* and subsequent decisions, the majority in *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293–94, n. 17, 43 L.Ed.2d 616 (1975) explained "the Court's application of the test focuses on the statutory elements of the offense." The emphasis on the "elements of the two crimes" was restated in *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977).

The *Corbin* Court also reaffirmed its rejection of a "same transaction" test for double jeopardy protection which some have believed to be part of the *Blockburger* language. *Corbin,* 495 U.S. at 5 n. 15, 110 S.Ct. at 2094 n. 15. In *Garrett v. United States,* 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764 (1985), the Court noted it has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." Wyoming formerly followed this rule. *State v. Tobin,* 31 Wyo. 355, 367–68, 226 P. 681 (1924).

The third part of the analysis concentrates on double jeopardy protections. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter,* 459 U.S. at 366, 103 S.Ct. at 678; *accord Brown,* 432 U.S. at 165, 97 S.Ct. at 2225. In this portion of the analysis, however, precedent suggests the *Blockburger* test has been applied in an inconsistent manner.

The confusion regarding the proper application of the *Blockburger* test comes from its use both as a device for determining legislative intent, *Whalen,* 445 U.S. at 693–94, 100 S.Ct. at 1439, and as a test of double jeopardy protections, *Brown,* 432 U.S. at 166, 97 S.Ct. at 2225. The jurisdictional limits of the United States Supreme Court distinguish the Court's use of the test. When the Court is reviewing a federal law, the *Blockburger* test is used to

determine Congressional intent to authorize multiple punishment. *Albernaz*, 450 U.S. at 340–42, 101 S.Ct. at 1143–44; *Gore v. United States*, 357 U.S. 386, 390–92, 78 S.Ct. 1280, 1283–84, 2 L.Ed.2d 1405, *reh'g denied* 358 U.S. 858, 79 S.Ct. 13, 3 L.Ed.2d 92 (1958). However, when the Court is reviewing state statutes, the state's highest court interprets the legislative intent. *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679; *Brown*, 432 U.S. at 167, 97 S.Ct. at 2226. In such cases, the United States Supreme Court analysis, and that of other federal courts, is restricted to whether a double jeopardy protection has been violated. *Hunter*, 459 U.S. at 368, 103 S.Ct. at 679. *Birr v. Shillinger*, 894 F.2d 1160, 1162 (10th Cir.), *cert. denied* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990), illustrates the rule's preclusive effect when federal courts are asked to review the Wyoming legislature's intent to authorize multiple punishment. Therefore, the jurisdictional limitation of the United States Supreme Court requires a careful evaluation and application of its precedent to double jeopardy cases.

In *Birr*, this court addressed whether cumulative punishments for being an accessory to felony murder and accessary to aggravated robbery resulted in a double jeopardy violation. Using the *Blockburger* test, the majority agreed with the trial court's evaluation of the "particular facts" as applied to the statute.

> The trial court determined that, in order to prove felony murder, it must be shown that a human being was killed. No killing is necessary to prove aggravated robbery. To prove aggravated robbery, it must be shown either that the defendant intentionally inflicted or attempted to inflict serious bodily injury or that the defendant used or exhibited a deadly weapon. Proof of these facts is not necessary to prove felony murder. As to the particular facts of this case, the trial court found that the [victims] were killed and that appellant supplied deadly weapons in the form of .357 magnum pistols. That the [victims] were killed was unnecessary to prove aggravated robbery but was necessary to prove felony murder.

> The pistols were unnecessary to prove felony murder but were necessary to prove aggravated robbery. Each fact is necessary to prove one of the offenses but is not necessary for proof of the other. Applying this reasoning, the trial court correctly determined that the offenses were not the same under *Blockburger v. United States* and that separate punishments were intended.

*Birr*, 744 P.2d at 1120–21. Only after applying the *Blockburger* test did the court reach the question of legislative intent. The analysis determined: "The felony murder statute is intended to provide punishment for murder; the underlying felony statute is intended to provide punishment for a variety of other evils such as sexual assault, arson, robbery, burglary, escape, resisting arrest, and kidnapping." *Id.* at 1121. Specifically, the court found that the felony murder statute was to protect an "interest in life" and the aggravated robbery statute was to protect an "interest in property." *Id.*

The analysis of *Birr* is incorrect. First, the finding of a legislative intent to authorize separate punishment for felony murder and aggravated robbery was inadequately evaluated. The specific language of the statutes was never discussed, and the conclusion that the aggravated robbery statute was intended to protect property was unsupported. Second, the *Birr* court's initial use of the *Blockburger* test, prior to a determination of legislative intent, discloses both a misunderstanding of relevant precedent and the absence of a requisite "clear indication" of legislative intent authorizing multiple punishments. *Whalen*, 445 U.S. at 691–92, 100 S.Ct. at 1437–38. Third, the *Birr* court incorrectly used the *Blockburger* test as an "evidence test." The test was never applied to the statutory elements of aggravated robbery and felony murder. Therefore, we believe it is necessary to re-address the question of whether the Wyoming legislature intended to authorize separate sentences for felony murder and the underlying felony.

■ Using the three-part analysis discussed earlier, we begin with the applica-

tion of our established rules of statutory interpretation. Using the plain language of the statutes, we give the words their plain and ordinary meaning. *Schultz v. State,* 751 P.2d 367, 370 (Wyo.1988). The examination should reveal the object and purpose of the statutes. *Id.*

The felony murder provisions are incorporated within Wyoming's first degree murder statute. "Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping, kills any human being is guilty of murder in the first degree." W.S. 6–2–101(a) (Supp.1991). The applicable statutory authority for this case would read: "Whoever ... in the perpetration of ... robbery ... kills any human being is guilty of murder in the first degree."

The definitive interpretation of the felony murder rule was announced by this court in *Richmond v. State,* 554 P.2d 1217 (1976), *reh'g denied* 558 P.2d 509 (1977). Although based upon an earlier version, W.S. 6–54 (1957), the operative language of the present statute is the same as that interpreted in *Richmond.* The *Richmond* court determined the required elements of first degree murder, premeditation, deliberation and malice aforethought, are imputed by a conclusive statutory presumption when one commits felony murder in the course of a robbery. *Richmond,* 554 P.2d at 1232; *Osborn v. State,* 672 P.2d 777, 793 (1983), *cert. denied* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984). "The homicide cannot be disassociated from the attempted robbery." *Richmond,* 554 P.2d at 1233.

The felony murder rule's purpose is to discourage *negligent or accidental* killings by individuals committing one of the underlying felonies. *Richmond,* 554 P.2d at 1232; 2 Wayne R. LaFave & Austin W. Scott Jr., *Substantive Criminal Law,* § 7.7(b) (1986). The felony murder statute imposes a form of strict responsibility on those perpetrating the underlying felonies for killings they commit. *Richmond,* 554 P.2d at 1232. The fact that the prosecutor chose to charge felony murder for an inten-

tional killing committed during the commission of one of the enumerated felonies does not alter the purpose of the statute. Given the facts of this case, the prosecutor could have charged Cook and Peterson with first degree murder for purposely and with premeditated malice killing Hanson. The prosecutor's decision may reflect a view that it was easier to obtain a felony murder conviction. LaFave & Scott, *supra,* § 7.7(b).

A hypothetical example of the felony murder rule's operation is useful. Postulate that during the course of a robbery, the perpetrator's gun *accidently* discharges killing a store clerk. Without a felony murder statute, the perpetrator is charged with involuntary manslaughter and aggravated robbery. If found guilty, manslaughter is punishable by a term of not more than twenty years. W.S. 6–2–105(b) (1988). The aggravated robbery count would be punishable by a term of not more than twenty-five years. W.S. 6–2–401(c) (1988). Assuming no multiple punishment violation, the maximum possible sentence becomes forty-five years. However, the presence of a felony murder rule punishes the same conduct by death or life imprisonment. W.S. 6–2–101(b) (Supp.1991).

Wyoming is among those states which limit the imposition of the felony murder rule by listing specific underlying felonies. The list includes those offenses traditionally regarded as "crimes of violence." Black's Law Dictionary 371 (6th ed. 1990). The legislature's selection of sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping discloses a purpose of providing a more significant punishment for the *negligent or accidental* killing which may occur during the commission of one of these crimes. The enumerated felonies are those which the legislature found to involve "a significant prospect of violence." LaFave & Scott, *supra,* § 7.5(b) (citing W.S. 6–2–101 (1977)).

Robbery, by definition, is a felony which involves a "significant prospect of violence." In Wyoming, robbery may be summarized as a larceny aggravated by force or fear. *Cloman v. State,* 574 P.2d 410, 419 (Wyo.1978). Larceny is defined by

W.S. 6–3–402(a) (1988) which provides: "A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny." The robbery statute incorporates the larceny definition stating: "A person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 he: (i) Inflicts bodily injury upon another; or (ii) Threatens another with or intentionally puts him in fear of immediate bodily injury." W.S. 6–2–401(a) (1988). Robbery, the enumerated felony in the felony murder statute, is a lesser included offense of the crime of aggravated robbery. "Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person: (i) Intentionally inflicts or attempts to inflict serious bodily injury; or (ii) Uses or exhibits a deadly weapon or a simulated deadly weapon." W.S. 6–2–401(c) (1988).

The purpose of the robbery statute is evident by the form of the cascade in which it exists. As the threat of or use of violence against the person increases, the severity of legislatively authorized punishment increases. Robbery, which is punishable by imprisonment for not more than ten years, becomes the crime of aggravated robbery by the nature of the injury inflicted or the type of weapon. The culmination of this protection is the first degree murder conviction of a perpetrator for a felony murder committed during a robbery. We hold, therefore, the purpose of the robbery statute is to protect lives and punish a crime of violence. The codification of robbery as an offense against the person supports this position. The *Birr* court erroneously determined that the robbery statute was intended to protect an interest in property, *Birr*, 744 P.2d at 1121.

The Wyoming legislature has not disclosed, in the language of the felony murder or aggravated robbery statutes, an express authorization for cumulative punishments when both statutes have been violated. Instead, the legislature has chosen to punish a crime of violence, robbery,

with successively greater sentences as the violence against the person increases. Cumulative punishment is not authorized without a "clear indication" of legislative intent. *Whalen*, 445 U.S. at 691–92, 100 S.Ct. at 1437–38. Therefore, it is necessary to move to the second part of the required analysis and apply the *Blockburger* test as a rule of statutory construction.

Directing our attention to the statutory elements, *Blockburger* asks "whether *each* provision requires proof of an additional fact which the other does not." In the context of this case, the felony murder provision required proof of these facts or elements:

(1) Killing a human being;
(2) while stealing, taking and carrying, leading or driving away another's property;
(3) with intent to deprive the owner;
(4) while intentionally inflicting serious bodily injury; or
(5) using or exhibiting a deadly weapon.

The aggravated robbery provision required proof of these facts or elements:

(1) Stealing, taking and carrying, leading or driving away another's property;
(2) with intent to deprive the owner;
(3) while intentionally inflicting serious bodily injury; or
(4) using or exhibiting a deadly weapon.

The additional fact or element required for a felony murder conviction is the killing of a human being. However, the aggravated robbery provision does not require proof of any additional facts from those proven for felony murder. Under *Blockburger*, legislative intent to authorize cumulative punishment is found only when *each* statute requires proof of an additional fact.

We hold the Wyoming legislature authorized punishment for the offense of felony murder; but multiple punishment for the underlying felony which supplies the premeditation, deliberation and malice presumption was not authorized by the legislature. Turning then to the third part of the analysis framework, we hold the imposition of multiple punishments for felony murder and the underlying felony violates the Dou-

ble Jeopardy Clauses of the United States and Wyoming constitutions. U.S. Const., Amend. V; Wyo. Const., Art. 1 § 11; *Hunter*, 459 U.S. at 366, 103 S.Ct. at 678; *Brown*, 432 U.S. at 165, 97 S.Ct. at 2225; *Duffy v. State*, 789 P.2d 821, 830 (Wyo. 1990).

The court's position finds support in the United States Supreme Court's holding in *Whalen*. Interpreting a District of Columbia felony murder statute that listed specific underlying felonies, the Court held "Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape...." *Whalen*, 445 U.S. at 693, 100 S.Ct. at 1438. The Court noted that, for purposes of imposing cumulative sentences, Congress had "intended rape to be considered a lesser offense included within the offense of a killing in the course of rape." *Whalen*, 445 U.S. at 694 n. 8, 100 S.Ct. at 1439, n. 8. *See also Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (holding Double Jeopardy Clause prevents prosecution for underlying felony after conviction of felony murder).

Additional practical support for our decision comes from a recognition of the punishment imposed for a first-degree murder conviction under the felony murder rule. The sentencing alternatives are death or life imprisonment. W.S. 6–2–101(b) (Supp. 1991). The finality of both punishments effectively precludes the need to resort to cumulative punishment. In Wyoming, if the sentence is life imprisonment, there is no parole. *Kennedy v. State*, 595 P.2d 577, 578 (Wyo.1979). The academic nature of the imposition of cumulative punishment, in this instance, is thus exposed. The possible bearing an additional sentence may have on a gubernatorial decision regarding commutation would be speculative and of no moment to the legislative intent. *See Birr*, 744 P.2d at 1122 (Urbigkit, J., dissenting).

The State of Wyoming urges that we heed the doctrine of *stare decisis* and avoid overruling *Birr*. *Stare decisis* promotes the "evenhanded, predictable, and consistent development of legal principles, fos-

ters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, —— U.S. ——, ——, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, *reh'g denied* —— U.S. ——, 112 S.Ct. 28, 115 L.Ed.2d 1110 (1991). *Stare decisis* considerations weigh most heavily in cases involving property and contract rights, where reliance interests are created. *Id.* at ——, 111 S.Ct. at 2610. As a principle of policy, not an inexorable command, *stare decisis* should not create a mechanical formula for adherence to the latest decisions especially in constitutional cases. *Id.* at ——, 111 S.Ct. at 2609–10.

The rule of *stare decisis* should not be rigid in its application. *Burns v. Burns*, 67 Wyo. 314, 224 P.2d 178, 183 (1950). The need to clarify an inappropriate application of a traditional rule creates a reason to depart from precedent. *Mostert v. CBL & Associates*, 741 P.2d 1090, 1094 (Wyo.1987). *Stare decisis* will not be followed when a required showing is made that a departure from precedent is necessary "to vindicate plain, obvious principles of law and remedy continued injustice." *Gueke v. Bd. of County Comm'rs*, 728 P.2d 167, 171 (Wyo. 1986); *Worthington v. State*, 598 P.2d 796, 804 (Wyo.1979). Wisdom does not come to us often. When it does, we should embrace—not slavishly reject it because of a questionable application of legal doctrine.

Applying these principles to our consideration of *Birr* directs an outcome. *Birr* was decided on a narrow margin over spirited dissent. *Birr*, 744 P.2d at 1122 (Urbigkit J., dissenting, joined by Cardine, J.). The validity of the *Birr* decision was questioned in the subsequent appeal of Birr's co-conspirator, *Schultz v. State*, 751 P.2d 367, 371 (Wyo.1988) (Urbigkit, J., specially concurring, joined by Cardine, J.), and later cases. *See Duffy v. State*, 789 P.2d 821, 840–41 (Wyo.1990) (Urbigkit, J., dissenting); *Lauthern v. State*, 769 P.2d 350, 359 (Wyo.1989) (Urbigkit, J., dissenting). Based upon the reconsideration given in this opinion, *Birr* was wrongly decided. The analytical clarification provided by recent United States Supreme Court precedent provides sufficient basis for this court

to overrule our holding in *Birr* that multiple punishments for the felony murder and the underlying felony were legislatively authorized.

## III

## CONCLUSION

The sentences, of 20 to 25 years, imposed upon Cook and Peterson for the underlying felony of aggravated robbery are vacated. The remaining sentences of life imprisonment for felony murder and 20 to 25 years for conspiracy, to be served consecutively, are undisturbed.

GOLDEN, J., files a concurring opinion.

URBIGKIT, J., files a specially concurring opinion.

MACY, C.J., and THOMAS, J., each file separate dissenting opinions.

GOLDEN, Justice, concurring.

I am pleased to concur in the well-reasoned opinion authored for the court by Justice Cardine. I write only to assure those who disagree with that opinion that it was not casually embraced.

After considerable homework, I have concluded that when convictions for both felony-murder and the underlying felony of aggravated robbery are obtained, the defendant may be sentenced only for the greater charge. In my judgment, that is what the Wyoming legislature intended. Consequently, I would overrule *Birr v. State*, 744 P.2d 1117 (Wyo.1987), *cert. denied*, 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990).

In studying this legal problem, I have paid close attention to the doctrine of *stare decisis*.

> *Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. See *Vasquez v. Hillery*, 474 U.S. 254, 265–266, 106 S.Ct. 617, 624–625, 88 L.Ed.2d 598 (1986). Adhering to

precedent "is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right." *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting). Nevertheless, when governing decisions are unworkable or are badly reasoned, "this Court has never felt constrained to follow precedent." *Smith v. Allwright*, 321 U.S. 649, 665, 64 S.Ct. 757, 765, 88 L.Ed. 987 (1944). *Stare decisis* is not an inexorable command; rather, it "is a principle of policy and not a mechanical formula of adherence to the latest decision." *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940). This is particularly true in constitutional cases, because in such cases "correction through legislative action is practically impossible." *Burnet v. Coronado Oil & Gas Co., supra*, 285 U.S., at 407, 52 S.Ct., at 447 (Brandeis, J., dissenting). Considerations in favor of *stare decisis* are at their acme in cases involving property and contract rights, where reliance interests are involved, see *Swift & Co. v. Wickham*, 382 U.S. 111, 116, 86 S.Ct. 258, 261–262, 15 L.Ed.2d 194 (1965); *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977); *Burnet v. Coronado Oil & Gas Co., supra*, 285 U.S., at 405–411, 52 S.Ct., at 446–449 (Brandeis, J., dissenting); *United States v. Title Ins. Co.*, 265 U.S. 472, 44 S.Ct. 621, 68 L.Ed. 1110 (1924); *The Genesee Chief v. Fitzhugh*, 12 How. 443, 458, 13 L.Ed. 1058 (1852), the opposite is true in cases such as the present one involving procedural and evidentiary rules.

*Payne v. Tennessee*, 501 U.S. ——, —— – ——, 111 S.Ct. 2597, 2609–11, 115 L.Ed.2d 720, 736–37 (1991). I have no personal axe to grind in these cases; I take no personal delight in overruling a previous decision of this court, whether it is only five years old or fifty. My decision in these cases is based on my understanding of the law, nothing more.

The legal problem to be solved in *Birr* was whether the Wyoming legislature in-

tended to impose multiple punishments. To determine legislative intent, the court used several judicial tools: *Blockburger's* test, purpose of each statute, and the location of the proscribed offenses within the statutes.

Under *Blockburger* we ask whether each statutory provision requires proof of an additional fact which the other statutory provision does not. The felony-murder provision requires proof of these facts:

1. A killing of a human being;
2. during the taking of another's property, which taking is attended by
3. the actor's using a deadly weapon or the actor's intentional inflicting of serious bodily injury upon another.

The aggravated robbery provision requires proof of these facts:

1. Taking another's property attended by
2. the actor's using a deadly weapon or intentionally inflicting serious bodily injury upon another.

So far as I can tell, the felony-murder provision requires proof of the additional fact of the killing; but the aggravated robbery provision does not require proof of an additional fact which the felony-murder provision does not. Therefore, the answer to the *Blockburger* question is, no, *each* statutory provision does not require proof of an additional fact which the other statutory provision does not; rather, only one of the two statutory provisions, the felony-murder one, requires proof of an additional fact. Consequently, under *Blockburger's* test, there is only one offense.

Moving to the next judicial tool used to determine legislative intent, the purpose of each statute, *Birr* concludes that the felony-murder statute is intended to address the evil of murder while the underlying felony statute is intended to address non-murder evils, such as arson, sexual assault, robbery, etc. *Birr* also concludes the felony-murder statute is concerned with the interest to life while the underlying aggravated robbery statute is concerned with the interest to property. I disagree with these conclusions.

In my judgment the legislature intended both statutes to address the evil of harm to human beings; both are concerned with the interest to life. The common thread running through both provisions is an intent to deter criminal behavior that harms human beings and to punish those actors whose anti-social behavior presents a risk of harm to a fellow human being during the stealing of property. In *Richmond v. State*, 554 P.2d 1217, 1232 (Wyo.1976), this court observed that "[f]elony-murder is an unusual offense in that the death arising out of the robbery is purely an incident of the basic offense. It makes no difference whether or not there was an intent to kill." The killing may be purely accidental; it may be cold-blooded. The punishment is the same regardless of the inherent nature of the act of killing. The reason for this is the high degree of risk of causing death involved in the underlying act of using a deadly weapon to take another's property. Thus, the primary evil addressed by both the felony-murder provision and the aggravated robbery provision is the high degree of risk of harm to a human being involved in the act of using a deadly weapon to take another's property.

With respect to the interest-to-life concept, it is significant to me that the legislature placed both provisions in chapter 2 entitled "Offenses Against the Person." The underlying felonies of robbery and aggravated robbery are both primarily concerned with interests to life. Larceny, as a lesser-included offense of robbery and its aggravated sibling, is placed in chapter 3 entitled "Offenses Against Property." Consequently, I disagree with *Birr's* reasoning that the robbery provisions are only concerned with interest to property. Certainly, as larceny is a constituent part of robbery, robbery is somewhat concerned with interest to property; however, considering the high degree of risk of harm/death involved in robbery, I conclude robbery is much more concerned with the interest to life.

With respect to the legislature's placement of the felony-murder provision and the robbery provisions in separate statutes,

each with its own punishment provision, I do not conclude from this a legislative intent to permit multiple punishments. Rather, I find it more revealing in our exercise of determining legislative intent to consider the progression of both offense elements and associated punishments as we move from the basic larceny provision to the robbery provision to the aggravated robbery provision to the felony-murder provision. In larceny the actor takes another's property but does not interact behaviorally with the property owner. The punishment for taking another's property of a value of $500 or more is imprisonment of not more than ten years, a fine of not more than $10,000, or both. In robbery, the actor takes another's property while interacting behaviorally with that person. That is, with respect to a person (the larceny victim), the actor either inflicts bodily injury, threatens with immediate bodily injury, or intentionally puts in fear of immediate bodily injury. The punishment is imprisonment of not more than ten years regardless of the value of the property taken. In aggravated robbery, the actor, again taking another's property and interacting with a person, introduces a new element, either the actor intentionally inflicts or tries to inflict *serious* bodily injury or the actor shows or uses a *deadly weapon*. The punishment is imprisonment of not less than five nor more than twenty-five years. With respect to the progression from larceny to aggravated robbery, as the actor's behavior towards the victim increases the risk of harm to the victim, there is a corresponding increase in the amount of punishment meted out to the actor. That punishment, in my judgment, covers not only the property-taking element but also the risk-of-harm element. It is a punishment package.

This punishment package notion is present also when the robbery/aggravated robbery progresses to felony-murder. In felony-murder, the actor has interacted behaviorally exactly the same way with the robbery victim as he did before, with one important difference. Instead of inflicting or threatening or putting in fear of bodily injury and instead of inflicting or trying to inflict *serious* bodily injury or showing/using a deadly weapon, the actor kills the victim. But, the death may have been accidentally caused; it may have been in cold-blood. *How* it was caused is immaterial; all that matters is, it happened. The punishment is either death or life imprisonment, the latter being without possibility of parole. That punishment is the heaviest society can exact. That punishment, in my judgment, covers not only the property taking element but also the harm-to-human being element involved in the actor's behavioral interaction with the victim. Thus, from the basic offense of larceny, where the interest is property, the legislative scheme progressed through the robbery offenses, where the paramount interest is life, to the "unusual offense" of felony-murder, where the paramount interest is also life. Through this progression, the punishments have increased corresponding to the extent to which the interest to life is in jeopardy.

In addition to considering the above and foregoing judicial tools used in *Birr* to determine legislative intent, I have also considered a few others not employed in *Birr*. I have considered the case law of the jurisdiction from which our criminal statutes derived. *Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo.1981). I have also remembered that we try to avoid an intent that is unreasonable or leads to an absurd result; we read all statutes relating to the same subject or having the same general purpose as constituting one law, and, where possible, harmoniously construe them in order to avoid conflicting and confusing results. *Johnson v. Safeway Stores, Inc.*, 568 P.2d 908, 913 (Wyo.1977). We read these statutes as part of a general and uniform system of jurisprudence, *Civic Ass'n v. Railway Motor Fuels*, 57 Wyo. 213, 218, 116 P.2d 236, 245 (1941).

Our criminal statutes proscribing murder appear to have come from Indiana. *See* Wyo.Stat. § 450 (1899), which refers to R.S.Ind. § 1904, Indiana's first degree murder and felony-murder statute. *See also* Wyo.Stat. § 5789 (1910). Researching early Indiana cases, from 1855 through 1890,

one finds that the punishment for felony murder was death. That was also the punishment under Wyoming law after statehood in 1890. Thus, there are no early Indiana cases that decided the question we are faced with. Although early Indiana cases concerned felony murder (including robbery), there were obviously no instances of multiple punishments since death was the only punishment prescribed. Wyoming's felony murder statute remained the same as Indiana's well into this century. It remains similar even today. *See* Ind.Code Ann. § 35–42–1–1 (Burns 1985). I believe *Candler v. State*, 266 Ind. 440, 363 N.E.2d 1233, 1237 (1977), is the first occasion on which the Indiana Supreme Court had to decide whether an armed robbery conviction merged into a felony murder conviction when the felony murder consisted of a killing in the commission of an armed robbery. Merger was recognized. That decision has been followed in all like Indiana cases since. *See e.g., McCurry v. State*, 558 N.E.2d 817, 818 (Ind.1990); *Huffman v. State*, 543 N.E.2d 360 (Ind.1989), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 767 (1990); *Hicks v. State*, 474 N.E.2d 987, 990 (Ind.1985); *Eddy v. State*, 496 N.E.2d 24 (Ind.1986); *Elmore v. State*, 269 Ind. 532, 382 N.E.2d 893 (Ind.1978). Thus, in Indiana multiple punishments for felony murder and the underlying felony are prohibited.

Before leaving Indiana law, consider what was said in *Moynihan v. State*, 70 Ind.Rep. 126, 130 (1880), concerning the perpetration of the underlying felonies of rape, arson, robbery, or burglary:

> The perpetration of * * * these offences * * * involves great moral depravity and an utter disregard of the rights of *person and property;* and the legislature, for the protection of society and for wise ends, have thought it necessary to make the taking of life in the perpetration of * * * those offences, murder in the first degree, without any reference to any intent to commit the homicide. The party who perpetrates * * * those offences * * * intends a great wrong in the commission of the offence, and if death en-

sue he must take the consequences which results. (Emphasis added).

This was the state of the law in Indiana when Wyoming borrowed the felony murder statute from Indiana. *Moynihan* suggests a legislative intent that the heaviest punishment society can exact, death, is designed with the twin interests to life and property in mind. The punishment imposed is clearly related to the "great wrong in the commission of the" underlying felony.

With respect to whether a legislative intent of multiple punishments is likely, I think that possibility leads to an absurd imprisonment. If the sentence is death, it is absurd to tack on an additional punishment of "X" years of imprisonment. If the sentence is life imprisonment, in Wyoming there is no parole. *Kennedy v. State*, 595 P.2d 577, 578 (Wyo.1979). Thus, again, it is absurd to tack on an additional punishment of "X" years of imprisonment. To the argument that a life sentence can be commuted by the governor under Wyo. Const. art. 4, § 5, the simple answer is that that is of no moment in the context of determining *legislative* intent. The commutation power is strictly a matter within the constitutional prerogative of the executive department and does not concern this court. *Kennedy*, 595 P.2d at 578.

The Wyoming statutes proscribing offenses against the person, as found within chapter 2 of the title, relate to the same subject and have the same general purpose. Accordingly, we should read them as one law and, where possible, construe them harmoniously in order to avoid confusing and conflicting results. We must read these provisions as part of a uniform system of jurisprudence. Reading these particular statutes in this light, I find that the legislative intent was to impose only the greater punishment, not multiple punishments, in the felony-murder situation. Given the graduated levels of punishment as the crimes progress from the basic offense (against property) of larceny through robbery (offense against person and property) to felony murder (offense against person and property), I see a uniform system of jurisprudence and am convinced that the

legislative intent was a single punishment, which, as noted earlier, is the severest our society can impose on one of its members.

Finally, we know that penal statutes are to be strictly construed and, in case of doubt, a rule of lenity may be applied. Application of these rules would assist in resolving the question in favor of a single greater punishment.

In closing, I would offer this thought with which I agree:

> [S]tare decisis does not spring full-grown from a "precedent" but from precedents which reflect principle and doctrine rationally evolved. Of course, it would be fool hardy not to recognize that there is potential for jurisprudential scandal in a court which decides one way one day and another way the next; but it is just as scandalous to treat every errant footprint barely hardened overnight as an inescapable mold for future travel

*People v. Hobson*, 39 N.Y.2d 479, 348 N.E.2d 894, 901, 384 N.Y.S.2d 419, 425 (1976).

URBIGKIT, Justice, specially concurring.

I join in the cogently-reasoned decision of Justice Cardine and the concurrence of Justice Golden. I continue in my consistent opinion that *Birr v. State*, 744 P.2d 1117 (Wyo.1987), *cert. denied* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990) is wrong and that this court should determinatively follow the well-reasoned co-actor cases of *Garcia v. State*, 774 P.2d 623 (Wyo.1989) and *Schultz v. State*, 751 P.2d 367, 371 (Wyo.1988), Urbigkit, J., specially concurring.

In my perception, *Birr* misunderstands and misapplies *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.

306 (1932). It is even more unfortunate and destructive in its contaminative effect in the whole category of cases addressing the concept that an accused cannot be separately sentenced under concepts of double jeopardy for a principal offense and also at the same time for a lesser included offense, e.g., more than one life sentence or death penalty for the same murder.

Stare decisis has nothing to do with my disfavor for *Birr*. *Schultz* and *Garcia* were right and *Birr* was wrong. All three of those cases were decided at about the same time. For an identically determined case, see *State v. Elliott*, 186 W.Va. 361, 412 S.E.2d 762 (1991).

A frequent validating test of any well-reasoned decision is citation by other jurisdictions in later cases. *Birr* has been only cited once in a subsequent case in Utah, but then not for the principal concern regarding double jeopardy. Conversely, a thorough analysis of the developing law, including more recent cases, discloses a clear majority trend in favor of our decision today.

The issue in *Birr*, *Schultz*, *Garcia* and now here in this case is simple, well explained and limited factually. When a felony murder is charged and a conviction obtained, can the accused be sentenced for more than the life sentence with a concurrent sentence for both the felony involved in the felony murder and also for the underlying felony which created the presumption of malice and permits the felony murder conviction? [1]

First, consideration will be given to where *Birr* has reappeared in Wyoming law and then current national examination will be pursued regarding the defined concepts of double jeopardy and merger. It is first appropriate to restate the fallacy of

---

1. In a sense, this is a continued inane academic exercise. In Wyoming, a life sentence is for life subject only to commutation by the Governor. If the Governor decided to commute, the doubled-up sentence would not likely make a particle of difference. The problem is that rules of law, invalid or subverted as they may be, have a way of escaping from a limited context into other applications where more effective and equally faulty in use. The *Birr* fallacy could have, unfortunately, directly fit into lesser included dual sentencing results. The pale remnants of protection against double jeopardy would have suffered one more egregious body wound. Tragically, although the effort may be academic, the issue is deeply embedded within the basic constitutional protection that can be traced back before the time of Christ in world history. The issue is simple. Double jeopardy is, in this case, to be questioned—sentenced twice for the same criminal conduct.

*Birr.* *Blockburger* determined for analysis of legislative intent that double jeopardy violation was avoided if each charged offense had a different element from the other. *Birr* took only half of the formula and was based upon the murder result having a different element, although obviously the felony to be used for felony murder was intrinsically incorporated without a separate element into the conviction. Obviously, the underlying felony does not have a different element since it is the functional factor providing the presumption of malice required to reach the first degree murder status.

This half-right misapplication of *Blockburger* created the *Birr* indigenous result. As a matter of definition, the felony cannot have a different element from the murder and, in identical fashion, the lesser included offense within the murder cannot have a different element from the principally charged crime. Out of this half-use of *Blockburger*, the *Birr* dual punishment exception to double jeopardy was created. *See* Michael S. Rankin, Note, *CRIMINAL PROCEDURE—Consecutive Sentences for Felony Murder and the Underlying Felony: Double Jeopardy or Legislative Intent? Birr v. State*, 744 P.2d 1117 (Wyo.1987), XXIII Land & Water L.Rev. 603, 613 (1988), which states:

> Although the *Birr* court utilized a standard formulated by the United States Supreme Court to discern legislative intent, the court's analysis failed. In its analysis, the court did not conclusively determine legislative intent. When rules of statutory construction fail to discern legislative intent, courts must construe those statutes in favor of the defendant. While such a result is in accordance with United States Supreme Court standards and the defendant's presumption of innocence, the Wyoming Supreme Court ignored this well established principle. By neglecting to apply the statutory rule of construction in favor of lenity, the court subjected Birr to consecutive sentences in violation of the double jeopardy clause.

The fallaciousness of *Birr* at this time of continued regression of constitutional protection from the federal judiciary is highlighted by the subsequent consideration in *Birr v. Shillinger*, 894 F.2d 1160, 1162 (10th Cir.), *cert. denied* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990) where, without reference to *Blockburger*, the court's per curiam stated:

> Here, a majority of the Wyoming Supreme Court, in affirming petitioner's convictions and sentences over the dissent of two justices, held that the Wyoming legislature intended cumulative punishment for accessory to felony murder and accessory to the underlying felony of aggravated robbery. *Birr*, 744 P.2d at 1120–22. The majority's interpretation of the legislative intent for the imposition of multiple punishments is binding on this court irrespective of the views of the dissenters. Therefore, since the requisite legislative intent to impose multiple punishments exists, we find no violation of the double jeopardy clause.

The obvious concern is that there is nowhere in Wyoming law, statutory history, legislative activity or other informational material, any affirmative evidence that the Wyoming legislature intended to create a life sentence for felony murder and to add on a term of years for the constituent felony. Only by the improper application of *Blockburger* did we reach this juncture of a court-created exception to the Wyoming double jeopardy preclusion. Wyo. Const. art. 1, § 11.

The diffusion out of felony murder into lesser included concepts is illustrated by citation of *Birr* in dissent in *Howard v. State*, 762 P.2d 28 (Wyo.1988). The preference for multiple convictions for the same course of conduct and aversion to maintenance of the millennium-old concept of double jeopardy is well illustrated. *Lauthern v. State*, 769 P.2d 350 (Wyo.1989) demonstrated the contaminative potential of *Birr* to extend into the lesser included concepts, even though unnecessary in application and different, in fact, since the sentences were concurrent and not consecutive. *Baum v. State*, 745 P.2d 877 (Wyo.1987) is also dissimilar since two differentiated criminal events were considered without lesser in-

cluded concept application. *Birr* was then cited in *Garcia v. State*, 777 P.2d 1091, 1094 (Wyo.1989) for the opposite of its holding and a rather unusual idea for Wyoming law: "A defendant cannot receive multiple punishments for a single offense." *See, however, Nowack v. State*, 774 P.2d 561 (Wyo.1989) compared to *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

The extensive capacity of *Birr* to deny double jeopardy protection was forcefully presented in *Duffy v. State*, 789 P.2d 821 (Wyo.1990). *Duffy* conceptualizes why the prosecutorial discretion was originally limited in English law some four or more centuries ago by double jeopardy. *Duffy* raised the academic question of why limit criminal filings and trial to expected proof and defined offenses? Why not claim every crime in the criminal code and let the system at trial sort out whether the contended misconduct was embezzlement, homicide or only jay walking? This then is the history in Wyoming law of *Birr* and the recent regression of denied constitutional protection against double jeopardy.[2]

If logic and reasoned theory provide any relevance for structuring Wyoming law for future generations, consideration of the consecutive prosecution conclusions in *Har-* *ris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) and analysis of both the majority by Justice Kennedy and the dissent by Justice Scalia in *Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) might provide direction in adjudicative responsibility. In *Harris*, 433 U.S. at 682, 97 S.Ct. at 2913, the United States Supreme Court recognized:

When as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one.

The majority in *Thomas*, 491 U.S. at 387, 109 S.Ct. at 2528, stated:

Double jeopardy is an area of the law filled with technical rules, and the protection it affords defendants might at times be perceived as technicalities. This is irrelevant whether ancient and important principles embodied in the Double Jeopardy Clause are implicated. "Violations of the Double Jeopardy Clause are no less serious than violations of other constitutional protections." [*Morris v.*] *Matthews*, 475 U.S. [237], at 255, 106 S.Ct. [1032], at 1043 [89 L.Ed.2d 187]

---

**2.** One unfortunate aspect found in some of the cases is the failure of the court to recognize the difference between felony murder and premeditated murder. The double jeopardy issue and the entire subject of merger does not occur when homicide proof is something other than felony murder—for example, premeditated murder. *Taylor v. Whitley*, 933 F.2d 325 (5th Cir. 1991); *Harling v. United States*, 460 A.2d 571 (D.C.App.1983).

The merger doctrine when applied to felony murder, Russell R. Barton, Comment, *Application of the Merger Doctrine to the Felony Murder Rule in Texas: The Merger Muddle*, 42 Baylor L.Rev. 535 (1990), also addresses the differentiated subject of creation of felony murder instead of dual sentences for felony murder and its constituent felony, but confusion exists and some dual sentence decisions are approved or denied in terms of merger. General principles of lesser included offense non-multiplied prosecutions are also involved. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); Jennifer Hoagland, Comment, *Double Jeopardy and Pennsylvania's Merger Doctrine*, 62 Temple L.Rev. 663 (1989). *See also* S. Jill Weinlood, Note, *CRIMINAL LAW—Felony*

*Murder in Kansas—The Prosecutor's New Device: State v. Goodseal*, 26 Kan.L.Rev. 145 (1977); Note, *Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties*, 67 Yale L.J. 916 (1958); and Charles L. Cantrell, *Double Jeopardy and Multiple Punishment: An Historical and Constitutional Analysis*, 24 S.Tex.L.J. 735 (1983). *Cf.* George C. Thomas III, *A Unified Theory of Multiple Punishment*, 47 U.Pitt.L.Rev. 1 (1985).

The dysfunction in theory and double jeopardy application can be found in Kansas and New Mexico, both of which apparently reject the *Blockburger* thesis of precluded consecutive sentences where each offense does not have a separate element, yet applies merger to determine existence of the felony murder. *State v. Lucas*, 243 Kan. 462, 759 P.2d 90 (1988), *aff'd* 244 Kan. 193, 767 P.2d 1308 (1989); *State v. Prouse*, 244 Kan. 292, 767 P.2d 1308 (1989) compared to *State v. Bailey*, 247 Kan. 330, 799 P.2d 977 (1990), *cert. denied* — U.S. —, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991). *See also State v. Martinez*, 95 N.M. 421, 622 P.2d 1041 (1981) and *State v. Stephens*, 93 N.M. 458, 601 P.2d 428 (1979) compared to *State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990).

[ (1986) ] (BLACKMUN, J., concurring in judgment).

Justice Scalia stated in dissent:

The Double Jeopardy Clause is and has always been, not a provision designed to assure reason and justice in the particular case, but the embodiment of technical, prophylactic rules that require the Government to turn square corners. Whenever it is applied to release a criminal deserving of punishment it frustrates justice in the particular case, but for the greater purpose of assuring repose in the totality of criminal prosecutions and sentences.

*Thomas*, 491 U.S. at 396, 109 S.Ct. at 2533.

Wyoming's double jeopardy constitutional protection, derived since statehood from Wyo. Const. art. 1, § 11, is well anchored in conceptual understanding and historical precedent:

The law is well settled that if a defendant is convicted of a lesser felony than that charged in the indictment, he cannot again be tried for the greater, nor can a defendant claim a new trial on the ground that the jury found him guilty of a lesser grade of the offense charged in the indictment than the evidence warranted.

*Phillips v. Territory*, 1 Wyo. 82, 84 (Wyo. 1872). Our earliest court discussed the sufficiency of an indictment and, in recognizing that it failed in another particular, then observed:

Not alleging those facts, it does not identify the offense upon the record; and therefore does not secure the accused in his right to plead *autre fois acquit* or *autre fois convict* to a second prosecution for the offense. This right is made constitutional by that amendment; it declares that "no person shall be subject for the same offense to be twice put in jeopardy of life or limb"; which, according to the 18 Wall, 163, *ex parte Lange* [85 U.S. 163, 21 L.Ed. 872 (1873) ], means that he shall not be put in jeopardy of a second punishment for the same offense. This provision of the amendment erects the common law upon the subject into a constitutional sanctity.

*McCann v. United States*, 2 Wyo. 274, 294 (Wyo.1880).

The seminal case in an opinion written by Justice Blume, *State v. Tobin*, 31 Wyo. 355, 226 P. 681, 685 (1924) (quoting *Byrne v. State*, 12 Wis. 525), recited:

"The rule is well settled that, where a statute makes either of two or more distinct acts, connected with the same general offense and subject to the same measure and kind of punishment, indictable separately and as distinct crimes, when each shall have been committed by different persons or at different times, they may, when committed by the same person at the same time, be coupled in one count, as constituting altogether but one offense."

This was followed by *Loddy v. State*, 502 P.2d 194 (Wyo.1972), *cert. denied* 414 U.S. 1134, 94 S.Ct. 877, 38 L.Ed.2d 760 (1974) and various other cases.[3]

This court then, in *State v. Carter*, 714 P.2d 1217 (Wyo.1986), Cardine & Urbigkit, JJ., dissenting, abandoned its historical

---

**3.** In *Loddy*, 502 P.2d at 197–98, *Tobin* was cited with approval and further quoted 24 C.J.S. *Criminal Law* § 1567(5) at 434–437:

"If the several counts of the indictment on which accused stands convicted in effect charge only one offense, or charge in different ways the commission of the same offense, or charge the commission of different crimes or degrees of crime which, by reason of the fact that they are of the same character and grow out of the same transaction, are in effect parts or aspects of one offense, or where the crime charged in one count necessarily embraces or includes the crime charged in another count, or is merged in, the crime charged in another, it is erroneous for the court, on a finding of a general verdict or plea of guilty, to impose separate penalties for the several counts, whether by way of separate sentences to run successively, or a single gross sentence lumping the several penalties. In such case accused is subject only to a single penalty on all the counts constituting one entire offense * * *."

Other Wyoming cases providing identical perspectives include: *Jerskey v. State*, 546 P.2d 173 (Wyo.1976); *Boyd v. State*, 528 P.2d 287 (Wyo. 1974), *cert. denied* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975); *Jackson v. State*, 522 P.2d 1286 (Wyo.1974); and *Dorador v. State*, 520 P.2d 230 (Wyo.1974). *See also Howard*, 762 P.2d 28.

structure for the law, existent for approximately a century, without explanation or examination to adopt the separate evidence test instead of the transactional test which had historically existed. That result did not provide the most serious injury to Wyoming's constitutional interest in avoiding double jeopardy. It was *Birr*, 744 P.2d 1117, where only half of the separate evidence rule was used and *Blockburger* was cited, but misapplied, that brought us to this present juncture of creating dual penalties for one completely self-defined criminal offense. The anomaly and the absurdity, previously anticipated from *Birr*, was best illustrated in *Duffy*, 789 P.2d 821 where the *Birr* fallacy did make a difference which did not exist in *Birr* with the felony murder life sentence initially imposed.

As Justice Cardine and this writer recognized, *Birr*, 744 P.2d at 1122, did not really do anything but create a possible change in the parameters of philosophic review by the Governor under his power of commutation. Wyo. Const. art. 4, § 5. The danger was that *Birr* would have been followed by future cases where the multiplication of penalties were subject only to the imagination of the prosecution and the contribution of this court in eviscerating the century-old tradition of our law which was solemnly emplaced in the Wyoming Constitution as the preclusion against double jeopardy. Simply stated, when we take one criminal offense—felony murder, mandatory life sentence—and create two penalties without rhyme or reason, we abrogate a basic constitutional right.

The Fifth Amendment states that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court labeled the double jeopardy clause a "basic constitutional guarantee," *id.* at 718, 89 S.Ct. at 2077, and quoted an 1873 case that stated: " 'If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And ... there has never been any doubt of [this

rule's] entire and complete protection of the party when a second punishment is proposed in the same court on the same facts, for the same statutory offense.' " *Id.* at 717–718, 89 S.Ct. at 2076–77 (quoting *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872 (1873)).

*McIntyre v. Trickey*, 938 F.2d 899, 904 (8th Cir.1991). "What is critical is the double jeopardy relationship of the alleged offenses under statute, indictment, evidence and jury charge." *State v. Herrera*, 754 S.W.2d 795, 796 (Tex.App.1988).

The compelling majority rule which we today adopt that only one sentence can be given to a defendant convicted of both felony murder and the constituent felony includes this illustrative, but not even inclusive in current time, inventory: *Hall v. State*, 299 Ark. 209, 772 S.W.2d 317 (1989); *Richie v. State*, 298 Ark. 358, 767 S.W.2d 522 (1989); *McClendon v. State*, 295 Ark. 303, 748 S.W.2d 641 (1988); *People v. Guffie*, 749 P.2d 976 (Colo.App.1987); *People v. Horton*, 683 P.2d 358 (Colo.App.1984); *People v. Raymer*, 662 P.2d 1066 (Colo.1983); *State v. Wood*, 208 Conn. 125, 545 A.2d 1026, *cert. denied* 488 U.S. 895, 109 S.Ct. 235, 102 L.Ed.2d 225 (1988); *State v. Usry*, 205 Conn. 298, 533 A.2d 212 (1987); *Harling v. United States*, 460 A.2d 571 (D.C.App.1983); *Rainwater v. State*, 260 Ga. 807, 400 S.E.2d 623 (1991); *Thomas v. State*, 256 Ga. 176, 345 S.E.2d 350 (1986); *Gore v. State*, 246 Ga. 575, 272 S.E.2d 306 (1980); *Atkins v. Hopper*, 234 Ga. 330, 216 S.E.2d 89 (1975); *State v. Ah Choy*, 70 Haw. 618, 780 P.2d 1097 (1989); *Sivak v. State*, 112 Idaho 197, 731 P.2d 192 (1986).

Additional cases which follow the double jeopardy majority rule regarding dual sentencing for felony murder include: *People v. Trimble*, 220 Ill.App.3d 338, 162 Ill.Dec. 790, 580 N.E.2d 1209 (1991); *People v. Cook*, 129 Ill.App.3d 531, 84 Ill.Dec. 719, 472 N.E.2d 856 (1984); *People v. Holman*, 103 Ill.2d 133, 82 Ill.Dec. 585, 469 N.E.2d 119 (1984), *cert. denied* 469 U.S. 1220, 105 S.Ct. 1204, 84 L.Ed.2d 347 (1985); *Huffman v. State*, 543 N.E.2d 360 (Ind.1989), *cert. denied* 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 767 (1990); *State v. Jones*, 525

So.2d 1149 (La.App.1988); *State v. Stewart*, 400 So.2d 633 (La.1981); *Shabazz v. Com.*, 387 Mass. 291, 439 N.E.2d 760 (1982); *People v. Zeitler*, 183 Mich.App. 68, 454 N.W.2d 192 (1990); *People v. Wilder*, 411 Mich. 328, 308 N.W.2d 112 (1981); *People v. Anderson*, 62 Mich.App. 475, 233 N.W.2d 620 (1975); *State v. Fratzke*, 354 N.W.2d 402 (Minn.1984); *State v. Lane*, 629 S.W.2d 343 (Mo.1982); *State v. Connell*, 208 N.J.Super. 688, 506 A.2d 829 (1986).

The list continues: *People v. Castillo*, 178 A.D.2d 113, 576 N.Y.S.2d 855 (1991); *see also* manslaughter and constituent assault, *People v. Garland*, 177 A.D.2d 410, 576 N.Y.S.2d 848 (1991); *People v. Bokun*, 145 Misc.2d 860, 548 N.Y.S.2d 604 (1989); *State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446 (1987), *cert. denied* 373 S.E.2d 554 (N.C.1988), *cert. granted and judgment vacated on different issue*, 494 U.S. 1022, 110 S.Ct. 1465, 108 L.Ed.2d 603 (1990); *Tibbs v. State*, 819 P.2d 1372 (Okl. Cr.1991); *Munson v. State*, 758 P.2d 324 (Okl.Cr.1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *State v. Fish*, 282 Or. 53, 577 P.2d 500 (1978); *Com. v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981); *State v. Powers*, 566 A.2d 1298 (R.I.1989); *Herrera*, 754 S.W.2d 795; *State v. McCovey*, 803 P.2d 1234, 1238 (Utah 1990); *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991); *State v. Tesack*, 181 W.Va. 422, 383 S.E.2d 54 (1989); *Elliott*, 412 S.E.2d 762.

See also, in federal court cases: *Taylor v. Whitley*, 933 F.2d 325 (5th Cir.1991); *Neville v. Butler*, 867 F.2d 886 (5th Cir. 1989); *Rubino v. Lynaugh*, 845 F.2d 1266 (5th Cir.1988); *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987); *Wiman v. Lockhart*, 797 F.2d 666 (8th Cir.), *cert. denied* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986); *Sekou v. Blackburn*, 796 F.2d 108 (5th Cir.1986).

It is recognized that a minority rule in a few state courts does exist founded upon the explanation that the felony does not constitute a lesser included offense within the felony murder, *Fallada v. Dugger*, 819 F.2d 1564 (11th Cir.1987) (Florida law); not a lesser included offense, *State v. Enmund*, 476 So.2d 165 (Fla.1985); *State v. Bailey*, 247 Kan. 330, 799 P.2d 977 (1990), *cert. denied* —— U.S. ——, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991); determined legislative intent, *State v. Close*, 191 Mont. 229, 623 P.2d 940 (1981); *Talancon v. State*, 102 Nev. 294, 721 P.2d 764 (1986); legislative interpretation, *State v. Blackburn*, 694 S.W.2d 934 (Tenn.1985); legislative interpretation, *Fitzgerald v. Com.*, 223 Va. 615, 292 S.E.2d 798 (1982), *cert. denied* 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 469 (1983). However, *see State v. Stephens*, 93 N.M. 458, 601 P.2d 428 (1979) compared to *State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990). Then, *see State v. Martinez*, 95 N.M. 421, 622 P.2d 1041 (1981) and the separate victim examination in *State v. Neely*, 112 N.M. 702, 819 P.2d 249 (1991). *Cf. Gaskin v. State*, 591 So.2d 917 (Fla.1991), felony murder and premeditated murder cannot be separate offenses for a single death.

Logic, constitutional theory, consistency and any rational application of legislative intent in establishing felony murder as one of two first degree murder crimes requires this present majority's decision. As simplistically as it can be stated, felony murder cannot be committed without commission of the intrinsically included felony. " ' "In other words, it is impossible to commit the greater offense without necessarily committing the lesser also." ' " *Trimble*, 162 Ill.Dec. at 795, 580 N.E.2d at 1214 (quoting *People v. Garza*, 125 Ill.App.3d 182, 188, 80 Ill.Dec. 483, 465 N.E.2d 595 (1984)). In concurring in this decision, I continue in consistent application of well-determined legal principles.

MACY, Chief Justice, dissenting.

The double jeopardy provisions of the United States and Wyoming Constitutions protect an individual against multiple punishments for the same criminal offense, *unless the Wyoming Legislature intends otherwise.* Thus, the deceptively simple question before this Court is: Did the Wyoming Legislature intend that an individual convicted of felony murder be sentenced for both felony murder and the underlying felony? Five years ago, a differently com-

prised court answered this question in the affirmative. *Birr v. State,* 744 P.2d 1117 (Wyo.1987), *habeas corpus denied,* 894 F.2d 1160 (10th Cir.), *cert. denied,* 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990). Today, the majority holds to the contrary and overrules *Birr.* Because I believe that the *Birr* court correctly ascertained the Wyoming Legislature's intent and that the *Birr* decision furthers the purpose of the felony-murder statute, I dissent.

I disagree with the majority using the "enlightened" *Blockburger* test as though it were some talismanic formula for the divination of legislative intent. It is not! The *Blockburger* test is merely one tool of many which may be used in the trade of statutory construction. The majority applies the "enlightened" *Blockburger* test to observe that felony murder requires proof of an element which is not required in proving aggravated robbery, but not vice versa. Extrapolating upon this observation, the majority invokes the assumption that legislatures "ordinarily do[ ] not intend to punish the same offense under two different statutes," *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), to conclude that the Wyoming Legislature did not intend that criminals convicted of felony murder be sentenced for both felony murder and the underlying felony.

I believe that the majority ignores an aspect of this case which is far more revealing of the Wyoming Legislature's intent than is the "enlightened" *Blockburger* test. The aspect of which I write is the Wyoming Legislature's reaction to the *Birr* decision. This Court has stated on many occasions that the Wyoming Legislature's response to an interpretation of a statute by a co-equal branch of government is relevant to the inquiry of legislative intent. *See, e.g., Town of Pine Bluffs v. State Board of Control of State of Wyoming,* 647 P.2d 1365 (Wyo.1982); *School Districts Nos. 2, 3, 6, 9, and 10, in County of Campbell v. Cook,* 424 P.2d 751 (Wyo. 1967); and *Sanders v. Brown,* 80 Wyo. 265, 341 P.2d 85 (1959). The *Birr* decision clearly held that the Wyoming Legislature did intend that criminals convicted of felo-ny murder be sentenced for both felony murder and the underlying felony. In the five legislative sessions since *Birr* was decided, the Wyoming Legislature did not take any action to correct what is dubbed today as being an obviously erroneous determination of legislative intent. This fact speaks for itself.

I also believe that the *Birr* decision advances the purpose underlying the felony-murder statute. The majority states that the purpose of the felony-murder statute is to discourage accidental and negligent killings which occur during the commission of violent felonies. As an example of the statute's deterrent effect, the majority posits a hypothetical situation in which a criminal's gun accidently discharges, killing a store clerk during the course of a robbery. The majority notes that the aggregate sentence which could be imposed for the constituent crimes—aggravated robbery and manslaughter—would be forty-five years, but, because of the felony-murder statute, the defendant would be sentenced to life imprisonment or death for the same conduct.

The curious result of the majority's decision is exposed by the facts of this case. Here, Peterson *intentionally* killed the store clerk during the course of robbing a Gasamat station. The aggregate sentence which could have been imposed upon Peterson for the constituent crimes—aggravated robbery and first-degree murder—would have been life imprisonment plus twenty-five years or death. However, since the prosecutor invoked the felony-murder statute, the result of today's decision is that Peterson will receive a lesser sentence than he would have received had he been convicted of the constituent crimes. Personally, I feel that an *intentional* killing is more egregious than an accidental or negligent killing and that the purpose of the felony-murder statute, which I believe is to deter the commission of violent felonies, is furthered by the *Birr* decision.

As a final note, the majority justifies its decision in part by noting that whether to impose a sentence for an underlying felony, when the only sentencing alternatives for

felony murder are life imprisonment or death, is of academic interest only. The majority's academic argument applies, however, with equal force against disturbing settled law which is consistent with the Wyoming Legislature's intent and which furthers the purpose of the felony-murder statute.

Consequently, I dissent.

THOMAS, Justice, dissenting.

I, too, must dissent from the disposition of this case by the majority of the court. I join in the dissenting opinion of Justice Macy who very ably has made the case for following Wyoming precedent. *Birr v. State*, 744 P.2d 1117 (Wyo.1987), *cert. denied sub nom., Birr v. Shillinger*, 496 U.S. 940, 110 S.Ct. 3224, 110 L.Ed.2d 671 (1990), may be subject to analysis and dissection, but it is sound in result and should not be so casually overruled. Where is Cassandra when the need arises?

> Perhaps only a Cassandra will be heard to mourn the neglected rule of *stare decisis,* but it is a sad day indeed when our declarations within the same case are subject to judicial revision. If we are unwilling to take seriously what we write, how can we expect others to take us seriously?

*Jones v. State*, 798 P.2d 1206, 1208 (Wyo. 1990) (Cardine, J., dissenting).

As a threshold matter, it must be noted that both Cook and Peterson entered, pursuant to plea agreements, pleas of guilty to the offenses of felony murder and aggravated robbery. No mention is made in the majority opinions as to how the consecutive sentences imposed became a jurisdictional defect in these cases. Our usual rule is that a plea of guilty waives all nonjurisdictional defects. *Davila v. State*, 831 P.2d 204 (Wyo.1992), and cases cited. As we said in that case:

> Jurisdictional claims involve "the very power of the State to bring the defendant into court to answer the charge brought against him." *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628, 636 (1974). Jurisdictional defects include: unconstitution-

ality of the statute defining the crime pled to, *Armijo v. State*, 678 P.2d 864, 867–68 (Wyo.1984) failure of the indictment or information to state an offense, and double jeopardy. *Tompkins v. State*, 705 P.2d 836, 840 (Wyo.1985), *cert. denied sub nom., Tompkins v. Wyoming*, 475 U.S. 1052, 106 S.Ct. 1277, 89 L.Ed.2d 585 (1986).

*Davila,* 831 P.2d at 205–06.

A review of *Tompkins* readily discloses that the double jeopardy reference would occur only in the context of multiple prosecutions, not in the context of multiple sentencing.

Some analysis and dissection of the majority approach in this case likewise is appropriate and necessary. The point of departure in the majority opinion is that there is no clear indication of a legislative intention that the armed robbery, which serves as a predicate for invoking the felony murder statute, be punished separately from the killing. Consequently, the majority then proceeds to a second level application of the approach in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). This level of analysis involves a comparison of the elements of the statutory proscriptions, as done in the concurring opinion, in order to draw an inference with respect to the existence of separate crimes. If the elements are perceived to be identical, then a presumption arises in the law that the legislature did not intend to authorize separate punishments.

The majority justifies its decision by claiming the Wyoming legislature cannot be said to have intended to punish separately this armed robbery and the murder for which the robbery serves as a predicate to the definition of the killing as the crime of first degree murder. My primary difficulty with the majority position in this case is that it attributes an intention to the legislature which is contrary to human experience. The effect of the court's decision is that, in the context of multiple sentencing, the perpetrator is rewarded for killing the victim. This decision by the court deprecates human life and the right to be free from criminal acts. I do not agree that

this is an accurate appraisal of legislative intent.

As set forth in the majority opinions, the exercise of working one's way up the ladder of larceny and robbery is fascinating, but it is even more fascinating to work one's way up the ladder of homicide offenses. The majority example of a charge of manslaughter and aggravated robbery leading to consecutive sentencing is revealing. There is a suggestion that a multiple penalty violation could be found in such an instance, but I am satisfied consecutive sentences could be imposed for those two violations. Logic leads to the conclusion that the same would be true of second degree murder and aggravated robbery and, in such an instance, the sentencing could be for a term for life followed by the twenty-five year sentence for armed robbery. When one reaches the most serious degree of homicide, however, first degree murder, the legislative intention switches, and the majority can find no "clear indication" of a legislative intention to permit separate punishments. The majority opinion apparently concedes that, if the prosecutor had possessed the acumen to charge the murder as committed purposely and with premeditated malice, the two sentences could stand.[1] No explanation is offered as to why it would be consistent with legislative intent to permit punishment for both crimes in one instance, but not in the other. In fact, the robbery alluded to in the first degree murder statute is nothing more than a predicate for the murder charge, like a prior conviction is for the invocation of the habitual criminal sentence. Cook and Peterson simply were in the status of robbers to justify the invocation of the first degree murder statute. *See Evans v. State*, 655 P.2d 1214 (Wyo. 1982).

The majority cites *Richmond v. State*, 554 P.2d 1217 (Wyo.1976), *reh'g denied*, 558 P.2d 509 (Wyo.1977), as explaining that "the required elements of first degree murder, premeditation, deliberation and malice aforethought, are imputed by a conclusive statutory presumption when one commits felony murder in the course of a robbery." Op. at 1351. The question that must be addressed is why the legislature could possess an intention to authorize multiple punishments if the murder is charged as having been committed "purposely and with premeditated malice," but would not retain the same intention when the murder is charged as having been committed in the course of a felony, which simply results in a conclusive presumption that the elements of killing "purposely and with premeditated malice" are present. Why would the legislature have intended this disparate result? I submit the legislature did not. The majority has simply reached a result it prefers as a product of an academic exercise. The majority wanted to reach this result, but failed to recognize the logical fallacy inherent in it.

Nothing demands that Cook and Peterson receive the benefit of a twofer rule other than the decision of the majority to conform to decisions elsewhere and be consistent with those foreign jurisdictions. The contention that the legislature did not intend dual punishment of these offenses is simply an effort to share the blame with the legislature for a rule this court chooses to adopt. As the majority notes, the question may be academic because, in theory, neither Cook nor Peterson will ever serve the sentence for armed robbery. This court does not always maintain the validity of convictions, however, and if that were to occur in this or a similar case, the consecutive sentence would not be academic.

We need to keep before us always that we are engaged in the business of government, not academic exercises. The rights of all the people are too important to be addressed at any level other than serious reality. We write and decide for the people of the State of Wyoming, not for the academy. The conclusion of the majority here, that the preservation of the rights secured by the Fifth Amendment to the Constitution of the United States and art. 1, § 11 of the Wyoming Constitution requires the ab-

---

1. "Given the facts of this case, the prosecutor could have charged Cook and Peterson with first degree murder for purposely and with premeditated malice killing Hanson." Op. at 1351.

rogation of the sentence for armed robbery imposed upon Cook and Peterson, is simply overkill. In my judgment, pragmatic government demands both sentences stand as a vindication of the rights of the citizens of Wyoming and a clear statement to those who may commit murders during the course of robberies that the State of Wyoming takes seriously its obligation to punish separately violations of all different statutes.

The decision of the majority rewards malefactors such as Cook and Peterson for killing their victim by limiting the available sanctions. I cannot believe the Wyoming legislature could possibly have intended that result. If Cook and Peterson had only wounded their victim, I think there is little doubt under Wyoming cases that they would have been subjected to a punishment for each crime they committed. In this instance, they committed the crime of robbery and the crime of felony murder, and I can discern no inherent barrier other than academic fascination that forestalls the punishment for each crime. As Justice Macy points out, if the legislature did not agree with the separate punishments for the separate crimes, they had ample opportunity to articulate a different policy position.

In other cases, we correctly have promulgated the rule that each crime committed can be punished separately. *Rivera v. State*, 840 P.2d 933 (Wyo.1992); *Baum v. State*, 745 P.2d 877 (Wyo.1987); *Hamill v. State*, 602 P.2d 1212 (Wyo.1979).

> [A]s to each victim, Rivera was charged with violation of §§ 6–2–302(a) and 14–3–105. These statutes define different crimes. *McArtor v. State*, 699 P.2d 288 (Wyo.1985). They are intended to suppress different evils; an acquittal and conviction under one does not prevent prosecution under the other. *Goodman v. State*, 601 P.2d 178 (Wyo.1979). In *Baum v. State*, 745 P.2d 877 (Wyo.1987), we held that there is no violation of a defendant's fundamental right to not be placed twice in jeopardy under the Fifth Amendment to the Constitution of the United States or under art. 1 of the Constitution of the State of Wyoming when

conviction and punishment on two counts occurs even though both acts were committed during the same encounter with the victim. Under two separate statutes, two separate criminal acts can be charged, tried, and punished.

*Rivera*, 840 P.2d at 933.

These cases clearly imply a rejection of the same transaction concept, which this majority decision specifically rejects.

> Our rule is like that articulated in *People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840 (1970), *cert. denied*, 402 U.S. 972, 91 S.Ct. 1658, 29 L.Ed.2d 136 (1971), in which the court held that two or more distinct offenses may emanate from the same transaction or act, and the rule that a person cannot be put twice in jeopardy for the same offense is not applicable where two separate and distinct crimes are committed by one and the same act. In *Hamill v. State*, 602 P.2d 1212 (Wyo. 1979), we have a clear example of repeated violations of the same statute in the perpetration of sexual assaults. We held there that the legislature intended to protect the victim against each identifiable sexual penetration. Consequently, even though a continuing course of conduct was involved, each penetration constituted a separate and distinct crime. In *Baum*, we held that, if different criminal acts are at issue, supported by different factual evidence, even though they are separated in time by only a few seconds, one offense is not included in the other. "The defendants can properly be punished for [all], under different, or the same, statutory provisions." *Baum*, 745 P.2d at 882 (quoting *State v. Molitoni*, [6 Haw.App. 77] 711 P.2d 1303, 1306 (Hawaii App.1985), quoting in turn *State v. Pia*, [55 Haw. 14] 514 P.2d 580, 584–85 (Hawaii 1973)).

*Rivera*, 840 P.2d at 943.

If it is correct that the legislature did not intend to punish these offenses separately (which I dispute), then it is not necessary to consider the potential of a constitutional violation. The academic discussion of the majority relating to the constitutional viola-

tions is nothing more than dictum, and simply demonstrates a compulsion to be erudite with respect to constitutional law. The majority prefers to avoid responsibility for its choice of rules by erroneously attributing an intention to the legislature that these crimes not be punished separately, but wants to claim the credit for an enlightened interpretation of the constitutional rights of the defendants.

The majority decision results in the application of a same transaction rule, even though it is specifically eschewed. By attributing to the legislature the intention that the two offenses of robbery and felony murder lead to only one punishment, the one transaction is treated as only one crime. If we look at what the majority says we then must be confused by what the decision does. I cannot find any justification for attributing an intention to the legislature to merge these offenses for punishment, except that it serves as a convenient excuse to make the court's choice appear to be the fault of the legislature.

As we contemplate and analyze legislative intent, we must note that Wyo.Stat. § 6–2–101 (1988) describes a killing "in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnapping" (emphasis added). The majority opinion simply assumes that the reference to "any * * * robbery" is to a robbery as defined in Wyo.Stat. § 6–2–401 (1986). Yet, Wyo. Stat. Title 6, Crimes and Offenses, is replete with demonstrations that the legislature knew how to refer to another provision of the statutes. *E.g.*, Wyo.Stat. §§ 6–2–105; 6–2–106; 6–2–107; 6–2–303; 6–2–305; 6–2–306; 6–2–307; 6–2–312; 6–2–401; 6–2–503; 6–3–402; 6–4–101; 6–4–102; 6–4–201; and 6–4–402. It is clear to me that, if the references in the felony murder language were to statutory definitions of the several offenses, a cross-reference would be found in the statute. The absence of

such a cross-reference is evidence of a legislative intent that the listed crimes are not necessarily those defined in other provisions of the Wyoming statutes, leading to a conclusion the legislature intended separate punishments.

The assumption by the majority is that the language of the statute is case specific, and one should look to the elements of aggravated robbery in this case in order to form a conclusion about double jeopardy. I have read and re-read the statute proscribing first degree murder, and I cannot find any reference there to aggravated robbery. The majority undoubtedly would make the same argument with respect to simple robbery, but I submit the analysis of the majority fails to account for the fact, included in the majority opinion, that a serious bodily injury was inflicted upon this victim before he was killed. It is clear the separate crime of aggravated robbery had been completed before the victim was killed as an incident of that crime.[2]

The majority fails to appreciate that there are those who have criminal minds. The failure to maintain separate punishments for these two crimes will be regarded as a victory by these malefactors and others of a like ilk. They are likely to assume it is better to kill the robbery victim because one will receive only one punishment. The fact that a life sentence may be imposed will have little impact because they do not perceive consequences anyhow. Furthermore, what if these life sentences should be set aside for some violation of the rights of the defendants? Would it not be comforting to society to have the sentence for the robbery still to be served? Perhaps, here or elsewhere, that conviction would serve as the predicate for a life sentence as an habitual criminal.

This case really is about choices. Cook and Peterson chose to rob a convenience store, and then they chose to kill the elderly clerk. This court then had a choice as to

---

**2.** In drawing out a comparison of the elements of these offenses, the majority has demonstrated that aggravated robbery must be perceived as a lesser included offense of the crime of felony murder committed with aggravated robbery as the predicate. This result creates a problem in an instance in which the victim does not die quickly, and the prosecution must proceed for aggravated robbery and aggravated assault or attempted murder. When the victim in such an instance later dies, prosecution for the most serious offense is foreclosed.

whether these malefactors should be punished for both of their crimes or for only one of them. It almost seems that the court needed to create a rule so the rule of lenity could be invoked. I cannot avoid the belief that this is an instance in which the compulsion to be right has overridden the obligation to administer justice.

I would hold that Cook and Peterson are bound by the plea agreements they entered into, and they waived their right to challenge the rule in *Birr* by their pleas of guilty. I would further hold the legislature intended that felony murder and the predicate crime should be separately punished. I would affirm the sentences for both crimes in both cases.